STATE OF CONNECTICUT *v.* HYDE A. HARMAN
(10818)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and ASPELL, Js.

Argued October 8—decision released December 17, 1985

*Hyde A. Harman,* pro se, and *Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*C. Robert Satti, Sr.,* state's attorney, with whom was *Michael L. Regan,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue on this appeal is whether the trial court denied the defendant his constitutional right to the assistance of counsel by failing to appoint new counsel for him for eleven weeks after the withdrawal of the defendant's previous attorney. The defendant, Hyde A. Harman, was convicted, after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49[1] and 53a-54a.[2] He appeals from this judgment.

---

[1] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[2] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another

The jury could reasonably have found the following facts concerning the underlying crime. The defendant and his wife separated in June, 1979. On October 28, 1979, the defendant drove to his wife's house, after having called her to say that he was going away and wanted to give her their dog. As he pulled into the driveway, his wife left the house and approached the car. Emerging from the car with a rifle in hand, the defendant told his wife that he was going to kill her, and then shot her in the stomach. As she turned to run away, he shot her three more times in the back. After she fell, he shot himself in the stomach.

The defense, at trial, centered on a claim of mental disease or defect, a defense that the jury rejected. On appeal, the defendant's chief claims of error are that the trial court deprived him of a fair trial in: (1) allowing him to remain unrepresented by counsel for eleven weeks; (2) erroneously instructing the jury on the insanity defense; and (3) improperly admitting the testimony of a psychiatrist. We find no error.

## I

The defendant first argues that the original trial court, *Hendel, J.*, unconstitutionally left him unrepre-

person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

sented for eleven weeks. On September 17, 1980, the defendant's attorney, special public defender Chester Fairlie, successfully moved to withdraw from the case. The trial court did not appoint new counsel to represent the defendant until December 3, 1980. The defendant claims that the trial court, by failing to replace Fairlie in a timely manner, violated his right to counsel guaranteed by the sixth amendment to the federal constitution and by article first, § 8, of the Connecticut constitution. In light of the unusual circumstances present in this case, we disagree.[3]

The record reveals an undisputed history of stormy relationships between the defendant and the attorneys appointed to represent him in this case. After the defendant's arrest, the court named assistant public defender Richard Singer to serve as defense counsel. The defendant soon began to complain that he did not want Singer and, on January 22, 1980, the trial court replaced Singer with public defender Edward Lavallee. By May, 1980, the defendant had ceased cooperating with Lavallee and had written a number of letters to the court demanding new counsel. On May 19, 1980, Lavallee withdrew and the court appointed a special public defender, Fairlie, to represent the defendant. The defendant repeatedly expressed dissatisfaction with Fairlie and refused to cooperate with him, prompting Fairlie twice to move to withdraw. The court denied both motions. To force the trial court to appoint new counsel, the defendant brought suit in federal court against Fairlie, as well as against Lavallee and Singer. On September 17, 1980, having received notice of the federal suit, the trial court allowed Fairlie to withdraw.

---

[3] Although the defendant never raised this claim at trial, we consider it here because the question of whether the trial court denied the defendant the right to the assistance of counsel involves a fundamental constitutional right. *State* v. *Vitale*, 190 Conn. 219, 232, 460 A.2d 961 (1983); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

Immediately thereafter, the trial court began its attempt to appoint new counsel. The defendant refused to waive his right to counsel, but warned the court that he would strongly object to the appointment of a public defender and threatened to cause further problems if the attorney he received did not satisfy him. The trial court told the defendant that it would not appoint counsel whom the defendant found objectionable and ordered that a public defender from another county be located. On September 24, the defendant returned to court and reiterated his objection to the appointment of a public defender. In light of the defendant's stance, the court did not appoint counsel. The defendant next appeared before the court on October 14. During that session, the state recommended an attorney to represent the defendant. The defendant objected. The court then offered to permit the defendant to interview another attorney. It gave the defendant the option of either accepting the attorney without objection after the interview or proceeding pro se. On October 21, after having met with the attorney, the defendant informed the court that he would accept him but that he would also object. The court declined to appoint the attorney. Rather than compel the defendant to represent himself, however, the court transferred the case to Hartford where it hoped that the defendant would obtain counsel satisfactory to him. Due to the heavy caseload in Hartford, the defendant's case was returned to the original trial court. During proceedings held on November 25, 1980, attorney Leo Flaherty offered to represent the defendant if the court transferred the case to Tolland. The defendant agreed to accept Flaherty without objection and the court transferred the case to Tolland. On December 3, 1980, the court in Tolland, *Spada, J.*, formally appointed Flaherty, who then served as the defendant's counsel for the remainder of the trial.

It is against this factual background that we must decide whether the trial court violated the defendant's

constitutional rights by failing to appoint new counsel for him for eleven weeks. Trial courts have an unquestioned obligation, under both the state and the federal constitutions, to provide indigent defendants with legal representation. *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); see *State* v. *Gethers,* 193 Conn. 526, 533, 480 A.2d 435 (1984). If appointed counsel withdraws from the case for good cause, the trial court must furnish a new attorney for the defendant. *McKee* v. *Harris,* 649 F.2d 927, 931 (2d Cir. 1981); *United States* v. *Calabro,* 467 F.2d 973, 986 (2d Cir. 1972); *State* v. *Beaulieu,* 164 Conn. 620, 628–29, 325 A.2d 263 (1973). The emergence of a conflict of interest between the defendant and his attorney establishes good cause for withdrawal of counsel. *McKee* v. *Harris,* supra; *United States* v. *Calabro,* supra. When a trial court is called upon to provide substitute counsel, it must do so expeditiously.

The defendant claims that the trial court's eleven week delay in appointing new counsel was an unconstitutional denial of his right to the assistance of counsel. The defendant does not challenge the trial court's apparent finding that, by suing Fairlie, he had himself created the conflict of interest that entitled him to a new attorney. He maintains, however, that the length of this delay, during an allegedly critical stage of the prosecution, necessarily gave rise to an irrebuttable presumption that he had been denied a fair trial. See *United States* v. *Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

Even if we were to agree with the defendant that, in the ordinary case, an eleven week delay in the appointment of substitute counsel is constitutionally impermissible, this is not the ordinary case. When the defendant's obstreperous behavior has materially contributed to the delay, we look to the totality of the cir-

cumstances to determine the propriety of the trial court's action. Cf. *Illinois* v. *Allen,* 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353, reh. denied, 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970); *United States* v. *Gipson,* 693 F.2d 109 (10th Cir. 1982), cert. denied, 459 U.S. 1216, 103 S. Ct. 1218, 75 L. Ed. 2d 455 (1983). In this case, the defendant's conduct justified the trial court's delay in naming a new attorney. The trial court could have immediately assigned a lawyer to whom the defendant objected and then insisted that the defendant either accept the appointed counsel or proceed pro se. See *McKee* v. *Harris,* supra, 931; *United States* v. *Calabro,* supra; *State* v. *Gethers,* 197 Conn. 369, 380, 497 A.2d 408 (1985); *State* v. *Beaulieu,* supra, 629–31; *State* v. *Hudson,* 154 Conn. 631, 637, 228 A.2d 132 (1967); *State* v. *Nash,* 149 Conn. 655, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962). Instead, the trial court, aware of the defendant's previous problems with his attorneys, sought to accommodate the defendant's objections and thereby prevent future disruptions of the trial that might prejudice the defendant. Indeed, the trial court took considerable pains to provide the defendant with a satisfactory attorney, transferring the case twice and repeatedly asking the defendant, to no avail, to name an attorney that he desired.

On this record, we are unpersuaded that the defendant was harmed in any way by the eleven week hiatus in his representation by counsel. The trial court did not compel the defendant to represent himself. Court proceedings during this period focused almost exclusively upon the search for new counsel. When the defendant insisted on immediate judicial disposition of his pro se motions for discovery, the court initially decided the motions but then refused to allow the defendant to argue pro se, ruling that the defendant had not waived his right to counsel and was merely awaiting the

appointment of a new attorney. In effect, the court virtually suspended the case until satisfactory counsel could be found. The defendant claims that, because he had no lawyer for eleven weeks, he was unable to depose a witness who was unavailable during trial. The defendant concedes, however, that this witness was available both before and after the gap in representation. The defendant also contends that he was unable to retain an investigator or a psychiatrist during that time. His new attorney, however, had ample time to investigate, obtain a psychiatrist, and conduct further discovery after the court had appointed him.[4]

This claim of error challenges the propriety of the trial court's response to extraordinary circumstances that the defendant himself created. "While courts must be assiduous in their defense of an accused's right to counsel, that right may not be 'manipulated [by the accused] so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.' *United States* v. *Bentvena,* 319 F.2d 916, 936 (2d Cir.), cert. denied sub nom. *Ormento* v. *United States,* 375 U.S. 940, 84 S. Ct. 345, 11 L. Ed. 2d 271 (1963). . . ." *United States* v. *Calabro,* supra. In this case, the trial court attempted to prevent such manipulation while ensuring that the defendant received assistance of counsel that both protected his rights and met with his satisfaction. We find no error in its actions.

## II

The defendant next contends that the trial court committed reversible error by inaccurately instructing the jury on the statutory defense of insanity. Although the court set out the elements of the defense contained in

---

[4] On appeal the defendant expresses no dissatisfaction with the performance of his new attorney.

General Statutes (Rev. to 1981) § 53a-13,[5] the defendant argues that the language used by the court in explaining the defense injected into the charge common law definitions that are irrelevant to the insanity defense in Connecticut.[6] Because the defendant failed to object to these instructions at trial, we need not review this claim on appeal.

This court reaches the merits on issues not raised at trial only where "a new constitutional right not readily forseeable has arisen between the time of trial and appeal" or where "the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State v. Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant in this case claims that the trial court's submission of a technically incorrect instruction on the insanity defense violated a fundamental constitutional right and denied him a fair trial. We disagree.

Although a defendant who raises the insanity defense is constitutionally entitled to an instruction that explains the defense to the jury, there is no fundamental constitutional right to a perfect charge. In a criminal case,

---

[5] General Statutes (Rev. to 1981) § 53a-13 provides as follows: "Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

[6] The defendant alleges that the court's instructions improperly included elements of the *Durham* test; *Durham* v. *United States,* 214 F.2d 862 (D.C. Cir. 1954); and the irresistible impulse test for insanity. General Statutes § 53a-13 employs neither test in defining insanity.

the state must prove, and the trial court must instruct the jury on, each essential element of the crime charged. See *Patterson* v. *New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); see also *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); *State* v. *Griffin,* 175 Conn. 155, 162–63, 397 A.2d 89 (1978). A trial court's failure to instruct on any of these elements warrants reversal regardless of whether the defendant objected at trial. See *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). Under General Statutes § 53a-13 as it read at the time of this trial, the state was required to prove the defendant's sanity, as an essential element of the state's case, whenever a defendant claimed insanity. *State* v. *Ontra,* 178 Conn. 480, 423 A.2d 134 (1979). Consequently, the trial court was constitutionally obligated to give the jury meaningful guidance on the insanity defense. The court's constitutional obligation did not extend to the giving of a charge that was beyond criticism in every particular. *State* v. *Kurvin,* supra. Accordingly, in the absence of plain error, *State* v. *Evans* does not mandate review of a claim that a reasonably informative instruction on insanity was in some particulars inaccurate, when the defendant has failed to take a proper objection at trial. *State* v. *Hinckley,* 198 Conn. 77, 84, 502 A.2d 388 (1985); see Practice Book § 3063 and cf. *State* v. *Smith,* 194 Conn. 213, 219–20, 479 A.2d 814 (1984).

In this case, the defendant concedes that the court submitted instructions on the insanity defense that were grounded in the requirements of the appropriate statute. Indeed, at trial the defendant's attorney praised the court's insanity instruction as the best he had ever heard. On appeal, the defendant complains

only that the trial court used inaccurate language in explaining several elements of the defense. Neither this claim nor the record supports a conclusion that *Evans* review is warranted.

## III

The defendant's third claim of error challenges the admissibility of testimony given by a court-appointed psychiatrist who examined the defendant before trial. The defendant argues that this testimony should have been suppressed because it revealed information that the psychiatrist had obtained during his examination of the defendant. According to the defendant, the court ordered the defendant to undergo the examination before he had placed his mental status in issue and thereby violated the privilege against self-incrimination protected by the fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. See *State* v. *Fair,* 197 Conn. 106, 110–11, 496 A.2d 461 (1985); *State* v. *Lovelace,* 191 Conn. 545, 550–51, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984). We find that the trial court properly admitted the testimony.

We need not consider the constitutionality of the court-ordered psychiatric examination in this case because the defendant stipulated to the admissibility of the psychiatrist's testimony. At trial, the state, out of concern that the psychiatrist's testimony might be suppressed, asked the court to order a new examination of the defendant and moved that the court forbid the defendant to introduce the testimony of his own psychiatrist because the defendant had failed to notify the state in timely fashion of his intent to rely on the insanity defense. To induce the state to withdraw these motions, the defendant agreed to stipulate to the admis-

sibility of the testimony of the state's psychiatrist.[7]
Having expressly consented, for tactical reasons, to
allow the state's psychiatrist to reveal information he
received during the examination, the defendant waived
any constitutional claims he may have had with respect
to this testimony and may not now challenge its admissibility on appeal. See *Neher* v. *United States,* 265 F.
Sup. 210, 215 (D. Minn. 1967); *People* v. *Fisk,* 50 Cal.
App. 3d 364, 370–71, 123 Cal. Rptr. 414 (1975).

## IV

The defendant in his supplemental brief raises certain other claims of error that require little discussion

---

[7] The trial court summarized the agreement between the state and the defendant:

"The Court: Are you comfortable then with the attorney's representation as to Dr. Miller and—the second doctor is Langhammer?

"Mr. Flaherty, Jr.: He is the first doctor. He is our doctor.

"The Court: Yes. But the Dr. Langhammer and Dr. Miller, that both doctors, notwithstanding whatever interpretation may be applied to Section 760, 759 of the Practice Book, may be fully examined in chief in cross-examination for the purposes of assisting the trier of facts and sharing the doctor's opinion or his conclusions as to the mental defect at the time of the alleged act. Are we in agreement on that?

"Mr. Satti: The State agrees.

"Mr. Flaherty, Jr.: Yes, your Honor, defense agrees.

"The Court: That if any statements were made by the accused to the doctor, and the doctor has relied upon some of those statements and/or admissions in arriving at his opinion as to whether a deficiency—mental deficiency existed or not, that that testimony will be allowed to be admitted without objection, subject only to the Court curing that admission by a proper warning to the jury, proper caution to the jury?

"Mr. Satti: That is the agreement of the State, your Honor.

"Mr. Flaherty, Jr.: Yes.

"The Court: Okay. Having said that, it means, Mr. Satti, that you will withdraw your motion?

"Mr. Satti: Withdrawn, your Honor, the objection to the testimony of expert witnesses dated January 12, 1981. Then I will also withdraw the motion for a psychiatric examination, dated January 12, 1981.

"The Court: Okay. You are withdrawing your objection then to the psychiatric expert that Attorney Flaherty will be introducing on behalf of Mr. Harman. You will also withdraw your request for the 760 Examination; is that correct?

"Mr. Satti: That is correct, your Honor."

in light of the record before us. These claims relate to the evidence admitted at the trial and to the sufficiency of the evidence to establish the defendant's guilt.

The defendant argues that the trial court erroneously permitted the jury to consider evidence of prior misconduct on his part. The defendant complains of evidence presented upon defense cross-examination of the defendant's wife and of hypothetical questions posed by the state in its cross-examination of the defendant's psychiatric expert.[8] As to the former, the defendant cannot be heard to complain about testimony that he himself elicited. As to the latter, the earlier testimony having been properly admitted, the defendant cannot show prejudice.[9]

The defendant's challenge to the testimony of the state's firearms and chemical experts cannot be sustained because of the absence of any objection at trial to the evidence now being questioned. In the absence of plain error or error falling within the constitutional ambit of *State* v. *Evans,* supra, these evidentiary challenges are unreviewable. See Practice Book § 3063.

The defendant's final argument concerns the sufficiency of the evidence to sustain his conviction. He attacks both the credibility of the witnesses against him and the good faith of the prosecutor. Our review of the record establishes that he can prevail on neither of these claims. See *State* v. *Sinclair,* 197 Conn. 574, 576,

---

[8] The state correctly notes that the defendant has briefed this issue improperly by failing to cite the specific evidence he finds objectionable. See Practice Book § 3060F (c); see also *State* v. *Jones,* 193 Conn. 70, 74 n.2, 475 A.2d 1087 (1984). We have decided, in the particular circumstances of this case, to consider this claim to the extent that we have done so only because the defendant has raised it pro se.

[9] We also note that the trial court instructed the jury that it was to consider the evidence of prior misconduct only in determining the defendant's sanity and not in deciding whether the defendant shot his wife.

500 A.2d 539 (1985); *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984).

There is no error.

In this opinion the other judges concurred.