STATE OF CONNECTICUT *v.* DONALD L. WILLIAMSON
(13248)
(13249)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 9, 1987—decision released March 29, 1988

*James V. Guarino,* with whom, on the brief, were *Elizabeth N. Byrne* and *Susan P. Geenty,* for the appellant in both cases (defendant).

*Kevin T. Kane,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee in both cases (state).

ARTHUR H. HEALEY, J. The defendant, Donald L. Williamson, appeals from three convictions arising out of two jury trials held in 1972. The defendant was convicted of the crime of rape in violation of General Stat-

utes (1958 Rev.) § 53-238[1] in a jury trial arising out of an incident that occurred on June 21, 1971. He was sentenced to a term of imprisonment of not less than ten nor more than twenty years to run consecutively to a sentence that he was then serving in West Virginia. The defendant was thereafter convicted of the crimes of rape in the first degree in violation of General Statutes (Rev. to 1972) § 53a-72[2] and kidnapping in the second degree in violation of General Statutes § 53a-94[3] in a jury trial arising out of an incident that occurred on October 17, 1971. He was thereafter sentenced to a term of imprisonment of not less than ten years nor more than twenty years[4] to run consecutively to both the West Virginia sentence and the sentence previously imposed for the earlier Connecticut rape conviction.

The defendant appealed all of these convictions to this court, but the appeals were not filed until October 25, 1978. Although this court ordered that briefs

---

[1] General Statutes (1958 Rev.) § 53-238 provides: "RAPE. Any person who commits the crime of rape upon any female shall be imprisoned in the State Prison not more than thirty years. Any person who carnally knows any female under the age of sixteen years shall be guilty of rape and shall be fined not more than one thousand dollars or imprisoned not more than thirty years or both. No female under the age of sixteen years shall be deemed capable of consenting to an act of intercourse."

[2] General Statutes (Rev. to 1972) § 53a-72 provides: "RAPE IN THE FIRST DEGREE: CLASS B FELONY. (a) A male is guilty of rape in the first degree when he engages in sexual intercourse with a female: (1) By forcible compulsion; or (2) who is incapable of consent by reason of being physically helpless; or (3) who is less than fourteen years of age.

"(b) Rape in the first degree is a class B felony."

[3] General Statutes § 53a-94 provides: "KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person.

"(b) Kidnapping in the second degree is a class B felony."

[4] In the case arising out of the incident of October 17, 1971, the defendant was sentenced to a term of imprisonment not less than ten nor more than twenty years on the rape count and to a term of not less than ten nor more than twenty years on the kidnapping count. These sentences were ordered to run concurrently.

be filed by a certain date, the briefs were not filed and the appeals were dismissed. The defendant then filed a habeas corpus petition, alleging that he was denied effective assistance of appellate counsel. The court, *Spada, J.,* granted the defendant's petition and ordered the defendant to file his appeals by a certain date. *Williamson* v. *Warden,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 273718 (September 22, 1986). The defendant then properly filed the two current appeals, which were argued together to this court.

The defendant raises a total of nine claims on appeal, including three that are common to both trials. Concerning the first rape conviction, the defendant claims that: (1) the trial court erred in admitting photographic identification of him; (2) the trial court erred in admitting rebuttal testimony of the complainant in the other case on appeal; (3) the trial court erred in sentencing him to a term of imprisonment consecutive to that imposed by a court of another jurisdiction; (4) the trial court erred in allowing him to appear in court dressed in prison clothes; and (5) he was denied his right to effective assistance of trial counsel. Concerning the later convictions for rape in the first degree and kidnapping in the second degree, the defendant claims that: (1) the trial court erred in failing to instruct the jury adequately regarding the elements of rape and kidnapping; (2) the trial court erred in sentencing him to a term of imprisonment consecutive to that imposed by a court of another jurisdiction; (3) the trial court erred in allowing him to appear in court dressed in prison clothes; and (4) he was denied his right to effective assistance of trial counsel. We find no error in either case.

I

The jury could reasonably have found the following facts regarding the defendant's first conviction of rape.

In Norwich, on June 21, 1971, at approximately 4 p.m., the victim, age 16, was invited by a friend to go swimming at another friend's house. After changing into a bathing suit and jump suit, the victim proceeded alone on a path through the woods near the Stanton School en route to her friend's house. As she emerged from the woods near the school, she was accosted by a man with a gun, later identified as the defendant, who grabbed her by the arm. She did not know him. The defendant held a gun to the victim's back and ordered her to walk into the woods. He started kissing her and ordered her to remove her clothes. The defendant then had sexual intercourse with the victim. The defendant threatened to kill her if she told anyone about the incident. After the defendant left the scene, the victim proceeded to a neighbor's house on Maple Street, recounted the incident, and was driven home. When the police first spoke to her at approximately 4:40 p.m., she was "quite upset [and] distraught." Following a later identification of the defendant by the victim from photographs provided by the police, the defendant was arrested. Other facts will be related as they pertain to the specific claims that the defendant raises on this appeal.

A

The defendant's first claim is that the trial court erred when it admitted, over defense counsel's objection, the victim's identification of the defendant from photographs shown to her by the police after the alleged rape. The defendant maintains that the photographic identification procedures used were impermissibly suggestive and unreliable when viewed in the totality of the circumstances.

A hearing held with respect to the motion to suppress this out-of-court identification revealed the following police procedure. On the evening of June 21, Officer

John Grillo of the Norwich police department went to the victim's home to interview her. Later that evening, he showed her a group of seven photographs, among which were one photograph of the defendant and one of his brother. The victim was unable to identify her attacker from these photographs. Two hours later, the victim's father called the police and told them that his daughter would like to see the photographs again. She had "calmed down considerably by [that time]." The police showed her the same seven photographs and she chose two photographs, one of the defendant and one of his brother, Terry, as appearing "similar" to her attacker but she was "doubtful." A member of the Norwich police told the victim that they would obtain more recent photographs of the defendant and his brother. The following morning, Officer James Dzialo showed the victim nine photographs, the original seven and two more recent photographs, one each of the defendant and his brother. This time the victim positively chose the more recent photograph of the defendant.

"A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). "In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad-hoc basis and is two-pronged: first it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.'" *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Miller,* 202 Conn. 463, 470, 522 A.2d 249 (1987); see also *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers,* 409 U.S. 188, 199–201,

93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). "Only if the procedures used to identify the accused are unnecessarily suggestive are we required to analyze the factors that determine the reliability of an identification for due process purposes." *State* v. *Miller,* supra. "An identification procedure is unnecessarily suggestive when it ' "give[s] rise to a very substantial likelihood of irreparable misidentification." ' *State* v. *Fullwood,* [supra, 243–44], quoting *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Vaughn,* 199 Conn. 557, 563, 508 A.2d 430 (1986)." *State* v. *Williams,* 203 Conn. 159, 174, 523 A.2d 1284 (1987).

The defendant attacks the photographic displays as impermissibly suggestive because of the recurrence of his photograph. He points out that photographs of him were shown to the victim on three different occasions. Moreover, of the nine photographs shown to the victim in the last array where she made a positive identification, two photographs were of the defendant and two were of the defendant's brother. "Pictorial recurrence is suggestive because by emphasizing the defendant it increases the risk of misidentification. *Simmons* v. *United States,* [supra, 377]; *State* v. *Harden,* 175 Conn. 315, 320, 398 A.2d 1169 (1978)." *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981). The recurrent use of a defendant's photograph in successive arrays, however, is not presumptively suggestive. *United States* v. *Bowie,* 515 F.2d 3, 7–8 (7th Cir. 1975); *State* v. *Boucino,* 199 Conn. 207, 219, 506 A.2d 125 (1986). For example, in *State* v. *Hinton,* 196 Conn. 289, 493 A.2d 836 (1985), this court held that when the initial identification is made with a high degree of assurance and the photograph in the second array is more recent than that used in the first, the procedure may not be suggestive. In *State* v. *Boucino,* supra, two witnesses were shown an

array of twenty-four photographs, which included one of the defendant, and then were shown an array of sixteen photographs, including two of the defendant. This was held not to be "unnecessarily suggestive." Id. In contrast, in *State* v. *Ledbetter,* supra, we held that the police procedures were impermissibly suggestive when those procedures included the recurrence of the defendant's photograph in two successive displays of eight photographs where only the defendant's photograph was repeated. In addition, *Ledbetter* included a later suggestive pretrial viewing of eight men that included the defendant. Id., 608–609.

In addition to the simple recurrence of the defendant's photograph in successive arrays, other circumstances point to an unnecessarily suggestive identification procedure in this case. Not only did the photographs recur, but the police informed the victim that they would return with more recent photographs of the two brothers whose photographs the victim had picked out because she "thought [they] might be her [attacker]," but about which she was "doubtful." In *State* v. *Austin,* 195 Conn. 496, 502, 488 A.2d 1250 (1985), we expressed our disapproval of the disclosure by the police of what the photographic array would contain, since the probative value of the identification was in some degree diminished by any such foreknowledge of the witness. The arrays in this case also did not involve large numbers of photographs. See *United States* v. *Mears,* 614 F.2d 1175, 1177 (8th Cir. 1980) (defendant's photograph occurred twice in array of seven photographs); *State* v. *Ledbetter,* supra. In addition, there was not the high degree of assurance in the initial identification that vitiated the suggestiveness of a second array with a more recent photograph such as occurred in *State* v. *Hinton,* supra, 292–93. We hold that the police photographic identification procedure in this case was impermissibly suggestive. By includ-

ing recurring photographs of the defendant in comparatively small arrays and informing the victim that a more recent picture of the defendant and his brother, one of whom she said might have been her attacker, would be included in a subsequent array, the police emphasized the defendant's photograph and rendered the identification procedure unnecessarily suggestive.

"The fact that a particular confrontation is impermissibly suggestive, however, does not automatically exclude the resulting identification. Because the linchpin in determining the admissibility of identification testimony is reliability, the central question is whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *State* v. *Ledbetter,* supra, 614; see *Manson* v. *Brathwaite,* supra; *Neil* v. *Biggers,* supra 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* supra, 199–200. "Against these factors is [weighed] the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* supra, 114; *State* v. *Ledbetter,* supra.

The reliability of the identification in the totality of the circumstances is supported by the factors listed above. We have recently noted that "[v]irtually no other crime offers the opportunity for observation of the perpetrator as the crime of rape. *Grant* v. *State,* 446 S.W.2d 620, 622 (Mo. 1969)." *State* v. *Amarillo,* 198 Conn. 285, 294, 503 A.2d 146 (1986). The victim had ample opportunity to observe her attacker since the assault occurred in daylight, lasted fifteen minutes, and she and the defendant were in close proximity through-

out the incident. Although her attacker "put [the gun] away" before the actual attack upon her, she was "scared to death" because of the gun. The victim was, however, able to describe accurately his appearance including his hair length and color, the type and color of his clothing, and his build. The victim did describe her attacker as being five feet, seven inches tall, when the defendant was actually six feet, two inches tall. This court has recognized that height approximations are difficult when the witness is prone; *State* v. *McKnight,* 191 Conn. 564, 469 A.2d 397 (1983); as the victim was much of the time in this case. Moreover, "[w]e have consistently held that a 'partial misdescription of the person being identified goes to the weight rather than to the admissibility of the identification.' *State* v. *Perez,* [198 Conn. 68, 76, 502 A.2d 368 (1985)]." *State* v. *Williams,* supra, 178. "The weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury." *State* v. *Kemp,* 199 Conn. 473, 478, 507 A.2d 1387 (1986). The victim in this case was unable to identify the defendant in the first array of photographs that she was shown. Officer Grillo testified, however, that the victim had been very upset over the incident. It was the victim, on her own initiative, who called the police to her house for a second showing that night. There she could only say that the two pictures of the Williamson brothers resembled her attacker. At the final showing, however, she was certain that the more recent photograph of the defendant was her attacker. His more recent picture was chosen by her without question; she testified that she "positively" picked out the defendant's more recent photograph. In making her identification of the defendant from the photographs, her memory of his "facial expression" was important and there was no question in her mind. This court has suggested that the use of a more recent photograph that

is different from the previous one "militate[s] against a conclusion. that the 'old photographs' influenced her subsequent identifications." *State* v. *Miller,* supra, 473. In this case, the photographs of the defendant and his brother shown earlier to the victim were four to five years old. The final factor is the time between the crime and confrontation. Here the positive identification was made on the morning following the assault. We conclude that, although the identification procedure employed by the police was unnecessarily suggestive, the out-of-court photographic identifications were sufficiently reliable under the "totality of the circumstances" to be admissible at trial.[5]

## B

The defendant's next claim is that the trial court erred in admitting the rebuttal testimony of the complainant in the October 17, 1971 incident during his trial for the June 21, 1971 incident. The defendant relied on an alibi defense and testified in great detail on direct examination that, with the exception of one week in September, he had been in Ohio, West Virginia or Michigan from mid-May, 1971, until either the last week in October or early November, 1971. The rape was alleged to have occurred on June 21, 1971. The state extensively questioned the defendant on cross-examination, without objection, regarding his whereabouts during the time periods covered in his direct examination.

---

[5] After the trial court denied the defendant's objections to the photographic identification, the victim made an in-court identification of the defendant.

Later in the state's case, another witness testified that, on the day of the attack upon the victim, he had been washing a car with a neighbor that afternoon at a location about fifty yards from where the paved area between Stanton School and Maple Street joins the street. At that time, his attention was drawn to the victim, who was crying and screaming as she came out of the path near the school. She came directly to the house where the witness was washing the car. Shortly before this witness saw the victim "carrying on," he had seen the defendant, whom he had known for "a few years," come out of the same path as the victim.

Thereafter, the state called the complainant in the October rape and kidnapping case in rebuttal. The defendant objected to her anticipated testimony, which was outlined in the absence of the jury, but the trial court overruled the objection and concluded that the testimony was proper on rebuttal.[6] The trial court ruled, however, that her testimony be limited to her identification of the defendant and not get into collateral crimes except "only insofar as it's necessary to just disprove the claimed alibi." The witness, however, testified to the fact that the defendant had held her at gunpoint for a two hour period on October 17, a date well within the time that he maintained that he had been out of state. She mentioned the gun on direct examination, and she did so only once. Fairly viewed, the state's question to her at that time did not call for the mention of a gun. Moreover, nothing was elicited from her by the state concerning a sexual assault. The defendant offered no objection, did not move to strike the answer, did not ask for a curative instruction at any time and did not move for a mistrial. In fact, defense counsel thereafter recalled the defendant to

---

[6] On rebuttal, the state called the victim in the second case to testify. At defense counsel's request, the jury was excused and he objected to her testifying because she was the complainant in the October 17, 1971 charges against the defendant and because allowing her to testify in effect required the defendant to defend himself against the second rape charge in the first rape case. He said, however, that the state had already told him that the purpose of her testimony was as rebuttal to the defendant's earlier testimony that on October 17, 1971, he had not been in Norwich. The state indicated to the court that if the defendant's testimony as to his presence in Norwich on October 17, 1971, were false, it should be rebutted. When the court inquired how far the state intended to go in questioning the witness, the state indicated that it "should not inquire of her" about the alleged October 17, 1971 sexual assault upon her by the defendant as it did not think it was necessary for the purpose for which her testimony was being offered.

The state did, however, say that it thought it must inquire as to "the locations and times and places." To the court's inquiry whether this "is to rebut the alibi testimony— presumed alibi testimony," the state replied,

the stand to refute this witness' testimony and, in doing so, proceeded to highlight her testimony in some detail.

On appeal, the defendant points to his exception at the trial that this witness not be permitted to testify. He points out that although the admission of rebuttal evidence is within the sound discretion of the court; see, e.g., *State* v. *Nims*, 180 Conn. 589, 599, 430 A.2d 1306 (1980); there was an abuse of that discretion in this case in admitting her testimony. He contends that the problem is one of "balancing the 'actual relevancy' of the 'other crimes' evidence given the issues and other evidence available to the state against its inflammatory effect on the jury." In doing so, he argues the prejudicial effect of her "other crimes" testimony outweighed its probative value and, therefore, he has discharged his burden of proving harmful error. He claims that her testimony, although relevant, had only a limited probative effect on his alibi testimony. He also argues that the trial court itself, sua sponte, should have acted to strike her prejudicial testimony or have taken other curative action. We find no error on this claim.

"The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court." *State*

"Yes." Defense counsel again objected. His objection was overruled and an exception was taken.

The court then indicated that the witness' testimony, as it understood it, "is limited to the fact that she saw [the defendant] in the jurisdiction at a certain time. Is that the instance to be proved in the area where he was?" The state replied, "Yes" and added that her testimony "would include" that she came out of a convenience store and the defendant "shoved a gun in her back and kidnapped her and took her off in [a car] and assaulted her, and was with her for a substantial period of time." The court, nevertheless, said that while it was going to be "awkward," it thought that "we can skip over and not put in testimony about the sexual assault . . . ." Defense counsel noted that the defendant was nonetheless charged with a major crime. The court then indicated that the fact that another crime had been committed does "not necessarily . . . prevent . . . evidence from coming in if it's necessary to prove a fact." It immediately went on to say: "I think we ought to limit this to identification, and not get into collateral crimes, only insofar as it's necessary to just disprove the claimed alibi." The state agreed and defense counsel noted his exception.

v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982); *State* v. *Nims,* supra. Although the defendant did object to her testifying at all, the trial court correctly permitted her to rebut the defendant's alibi. "Ideally, rebuttal evidence is that which refutes the evidence presented by the defense, rather than that which merely bolsters the state's case . . . ." *State* v. *Lisella,* supra. When a defendant offers evidence in his defense, it is probative to offer evidence that contradicts his testimony. *State* v. *Crowe,* 174 Conn. 129, 132, 384 A.2d 340 (1977).

"As a general rule, evidence of other crimes is not admissible to prove the bad character or criminal tendencies of the defendant. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Such evidence, however, may be admissible when a defendant testifies and his credibility is in issue. *State* v. *Brown,* 169 Conn. 692, 700–701, 364 A.2d 186 (1975). Even though the evidence may be relevant and material to the issue of the defendant's credibility, the court is still required to conduct a balancing test to determine whether the probative value of the evidence outweighed its prejudicial tendency. *State* v. *Braman,* 191 Conn. 670, 681, 469 A.2d 760 (1983). Ordinarily, 'prejudicial material, such as unrelated misconduct of an accused, not having substantial probative value upon some issue in the case should be excluded.' *State* v. *Anonymous (83-FG),* 190 Conn. 715, 730, 463 A.2d 533 (1983)." *State* v. *McClendon,* 199 Conn. 5, 13, 505 A.2d 685 (1986); *State* v. *Onofrio,* 179 Conn. 23, 28, 425 A.2d 560 (1979). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Howard,* 187 Conn. 681, 685, 447 A.2d 1167 (1982); *State* v. *Braman,* supra, 676. Our review is limited to whether the trial court's rulings exceeded the latitude accorded its

discretion in such matters. See *State* v. *Braman,* supra. Every reasonable presumption should be given in favor of the trial court's ruling. *State* v. *Howard,* supra.

The defendant's direct examination opened the door to inquiry concerning his absences from Connecticut in general and the Norwich area in particular from May, 1971, through the end of October, 1971. This was done in detail although the state had not explored this entire time period in its case-in-chief with its witnesses. In producing this witness, the state had the right to attempt to show that the defendant had been untruthful as to his absence from Connecticut on October 17, 1971. If proven, this fact would bear on whether he was telling the truth concerning his whereabouts on June 21, 1971. "When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word." *State* v. *Staples,* 120 N.H. 278, 283, 415 A.2d 320 (1980), quoted in *State* v. *Glenn,* 194 Conn. 483, 498–99, 481 A.2d 741 (1984). The defendant argues that while this witness' testimony was relevant, it was only "marginally" so. We do not agree. Even if we assume, however, that this might be so, what we said in *State* v. *Ouellette,* 190 Conn. 84, 102, 459 A.2d 1005 (1983), peculiarly applies in this case. In *Ouellette,* we said: "Matters which might not be strictly relevant on direct examination may be so on cross-examination where that matter is explored for the purpose of credibility. Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, '[t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony.' McCormick, Evidence (2d Ed.) § 29; see

*Brown* v. *United States,* 409 A.2d 1093, 1099 (D.C. App. 1979) (rape case)." *State* v. *Ouellette,* supra.

There was no mention of the alleged sexual assault upon the witness during her testimony. There was reference on her examination by the state that she was in·the defendant's presence for about two hours on October 17, 1971; this bore on the state's claim of her ability to identify him. She did state that when she came out of the convenience store after buying some milk, the defendant came up to her car and "pointed a gun at [her]." There was no objection or motion to strike this "gun" portion of her answer, no motion for a mistrial or for any curative instruction. It was the defendant's burden to act. He did not. He may have decided as a matter of trial strategy not to do so. "Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Estelle* v. *Williams,* 425 U.S. 501, 512, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). In the event that the jury viewed the witness' two hour presence with the defendant as suggesting criminal behavior, we do not conclude that, under the circumstances, the trial court erred in permitting the evidence of that conduct to stand. The trial court had indicated the limitations of her proposed testimony and it had recognized correctly that there are circumstances where testimony concerning collateral crimes can come into evidence. Moreover, the trial court was never asked to take any "curative" steps during or after the witness' testimony. Moreover, from its vantage point, the trial court could have decided that the just course to follow under the circumstances was the course that it took. *State* v. *Glenn,* supra. In any event, the defendant has not sustained his burden of demonstrating that

the trial court abused its discretion in permitting this witness to testify as she did under the circumstances. Although "it is the duty of the trial court to prevent situations from arising during the trial which would prejudice the accused in the minds of the jury"; *State* v. *Yates,* 174 Conn. 16, 19, 381 A.2d 536 (1977); the trial court cannot be expected to do something that the defendant never requested that it do. See *State* v. *Cosby,* 6 Conn. App. 164, 174, 504 A.2d 1071 (1986).

C

The defendant next claims that the trial court erred in imposing a sentence consecutive to that imposed previously by another jurisdiction, here the state of West Virginia. The defendant first argues that the trial judge in this case was operating under the mistaken belief that there was no authority for imposing a concurrent sentence and that a consecutive sentence was mandatory. The defendant asserts that this is a violation of the right to equal protection guaranteed under the Connecticut constitution and the United States constitution. We are unable to discern from the defendant's brief or from any inquiry of defendant's counsel during oral argument as to where in the record this alleged mistaken belief of the trial court appears. We reject the defendant's equal protection claim.

The defendant asks us to reassess the recent decision of the Appellate Court where that court held that a trial court had the authority to impose a sentence consecutive to the one imposed by a court in a different jurisdiction. *State* v. *Walzer,* 9 Conn. App. 365, 367, 518 A.2d 966 (1986).[7] The *Walzer* court stated that "[a]

---

[7] *State* v. *Walzer,* 9 Conn. App. 365, 518 A.2d 966 (1986), is not factually the same as the cases before us. In that case, the Connecticut court sentenced the defendant to a term of six years to run consecutively to an unrelated federal sentence that he was already serving.

In *Walzer,* the defendant's sole claim of error was that General Statutes § 53a-37 does not permit a sentence to run consecutively to an earlier

state court's inherent right to impose consecutive sentences has been recognized at common law in Connecticut and elsewhere." Id.; see *Redway* v. *Walker,* 132 Conn. 300, 306, 43 A.2d 748 (1945) ("in the absence of statute, the determination whether two sentences to the same penal institution shall run concurrently or consecutively is an incident to the judicial function of imposing sentences upon a convict and is a matter for the determination of the court"). The Appellate Court then reasoned that the "power to order a consecutive sentence includes the authority to impose a sentence consecutive to the one imposed by a court in a different jurisdiction." *State* v. *Walzer,* supra.

The defendant offers no cognizable reason why this court should prohibit the imposition of a sentence consecutive to that of another jurisdiction. Certain states' statutes expressly authorize concurrent or consecutive sentences to a sentence from another jurisdiction. See, e.g., New York Penal Law § 70.25 (4) (McKinney 1987). There are some jurisdictions where courts have prohibited consecutive sentencing to sentences from other jurisdictions absent express statutory authority. See, e.g., *Fewell* v. *Texas,* 687 S.W.2d 807, 811 (Tex. App. 1985) (stacking of state sentence with federal sentence not permitted). A number of jurisdictions have held that courts have the power to impose consecutive sentences to sentences from foreign jurisdictions even without express statutory authorization. See, e.g., *People* v. *Rutledge,* 630 P.2d 606, 607 (Colo. 1981) ("it is within the discretionary authority of the trial court to impose a sentence to be served consecutively to another sentence"); *State* v. *McKaughen,* 700 P.2d 93, 94 (Idaho App. 1985) (the "inherent power to impose consecu-

sentence unless the earlier sentence was imposed by a " 'court of this state.' " Id., 366. He then argued that because the federal court is not a "court of this state," there was no authority for the Connecticut court to sentence him as it did. The *Walzer* court then correctly held that § 53a-37 was not applicable to that case. Id., 367.

tive sentences includes the authority to impose a sentence consecutive to another sentence imposed by the court of a foreign jurisdiction"); *State* v. *Smith,* 633 S.W.2d 253, 254 (Mo. App. 1982); see 21 Am. Jur. 2d, Criminal Law § 553. The United States Supreme Court has recognized the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." *Williams* v. *New York,* 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); see also *State* v. *McKaughen,* supra (the issue of consecutive sentences concerns not where the offense occurred, but whether the nature of the crimes makes cumulative punishment appropriate). This philosophy is encompassed in the trial court's well established right to impose a sentence consecutive to one imposed within the same jurisdiction. General Statutes § 53a-37; *Redway,* v. *Walker,* supra, 306. In a well reasoned Connecticut trial court decision; *Wilson* v. *Warden,* 26 Conn. Sup. 4, 209 A.2d 688 (1964); the court, *Palmer, J.,* was confronted with a habeas petitioner who had been found guilty by a Connecticut court while he was serving a federal sentence in Pennsylvania and whose Connecticut sentence was to begin after he was released from federal custody. In *Wilson,* the petitioner argued that Connecticut could not require him to serve the Connecticut sentence after finishing his federal sentence. In doing so, he cited a Michigan case that held that where a person is serving a federal sentence, he may not receive a sentence in a state court to commence at the completion or expiration of the federal sentence in the absence of statutory authority. In rejecting this claim, the *Wilson* court said: "[The Michigan rule] is contrary to the long-established practice in this state, and also contrary to the general rule which sanctions the imposition of a sentence to commence upon release from service of a sentence in another jurisdiction. 24B C.J.S., Criminal Law § 1996 (6)." *Wilson*

v. *Warden,* supra, 6–7; see *Ponzi* v. *Fessenden,* 258 U.S. 254, 42 S. Ct. 309, 66 L. Ed. 607 (1922); 4 F. Wharton, Criminal Procedure (12th Ed. Torcia) § 629, p. 272. There is no reason to deny the authority to impose consecutive sentences simply because the current sentence is being served in another jurisdiction.

## D

The defendant's next claim is that the trial court erred in permitting the defendant to be dressed in prison clothes during the trial. He bases this claim on several references at the trial as the man "dressed in khaki." Although the defendant concedes that there was no objection made at trial, he asserts that the wearing of prison clothes is so prejudicial to the interests of the accused that the court committed reversible error in allowing the trial to proceed. The state contends that the record does not support the defendant's claim that he was wearing identifiable prison clothing and furthermore, by not objecting, the defendant waived this constitutional violation.

The Fifth Circuit, prior to the trial of the cases before us, said: "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." *Hernandez* v. *Beto,* 443 F.2d 634, 637 (5th Cir.), cert. denied, 404 U.S. 897, 92 S. Ct. 201, 30 L. Ed. 2d 174 (1971). The United States Supreme Court has since ruled that a defendant cannot be compelled to stand trial before a jury dressed in identifiable prison clothes. *Estelle* v. *Williams,* supra, 512–13. It also held, however, that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Id. This court has later concluded that a defendant may not be compelled to stand trial in prison clothes. *State* v. *Yates,* supra, 18 ("[i]f the defendant himself were placed on trial

while dressed in a prison uniform, there would be error"). This policy is implemented by Practice Book § 967.[8]

The state and the defendant disagree as to whether the defendant was, in fact, wearing identifiable prison clothes. During the trial, the defendant was identified as the man in the "khaki" clothes. The defendant's brief simply assumes that this refers to prison clothing, but he conceded during oral argument that there is no evidence in the record concerning whether this constituted identifiable prison clothing. There is also no evidence concerning whether the defendant was compelled to wear these clothes even assuming that he was doing so. This dispute over the facts highlights the need for the objecting party to make the record reflect his objection, his reasons for that objection, the trial court's ruling and an exception to that ruling. See Practice Book § 4061; State v. Tyler-Barcomb, 197 Conn. 666, 676, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); State v. Young, 191 Conn. 636, 653, 469 A.2d 1189 (1983). Although the possibility of a criminal defendant appearing before a jury dressed in prison clothes raises serious concerns about a fair trial, this court is unable to afford the defendant review or relief on the barren record before us. See, e.g., State v. Edwards, 201 Conn. 125, 159–60, 513 A.2d 669 (1986); State v. Tyler-Barcomb, supra. The issue of whether the failure to object constitutes a valid waiver also cannot be reached because it cannot be

---

[8] Practice Book § 967 provides: "RIGHT OF PRESENCE

"The defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing, except as provided in Sec. 966. Whenever present, the defendant shall be seated where he can effectively consult with his counsel and can see and hear the proceedings. An incarcerated defendant or an incarcerated witness shall not be required during the course of a trial to appear in court in the distinctive attire of a prisoner or convict."

ascertained on this record whether the defendant was dressed in prison clothes at all.

## E

The defendant's final claim is that the defendant's conviction should be reversed because he was denied effective assistance of counsel. Although the defendant concedes that this court has stated that "the issue of the adequacy of trial counsel is more properly pursued in a motion for new trial or on a petition for writ of habeas corpus than on direct appeal"; *State* v. *Barber,* 173 Conn. 153, 154–55, 376 A.2d 1108 (1977); he asks us to make an exception to the general rule. The state urges us to follow our recent policy of not hearing claims of ineffective assistance of counsel on direct appeal but to permit them to be raised in a habeas corpus proceeding. We agree with the state.

This court has maintained a consistent policy in recent years of refusing to hear claims of ineffective assistance of counsel on direct appeal. See, e.g., *State* v. *McIver,* 201 Conn. 559, 568–69, 518 A.2d 1368 (1986); *State* v. *Pardo,* 199 Conn. 354, 358, 507 A.2d 461 (1986); *State* v. *Leecan,* 198 Conn. 517, 542, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). In *State* v. *Leecan,* supra, we stated: "[W]e shall not review at this time even the portion of the defendant's ineffective assistance claim that he contends is adequately supported by the record. . . . [W]e believe that his ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." Although the defendant claims otherwise, our policy is supported by the circumstances of this case. An evidentiary hearing where the defendant's trial counsel can testify, for example, as to why no objections were made concerning the alleged prison clothes or why

he did not move to strike the allegedly prejudicial answers from the state's rebuttal witness, as well as other claims the defendant makes, is necessary to evaluate the defendant's ineffective assistance claim. We decline to entertain that claim in this appeal.

## II

The defendant also appeals from his subsequent conviction of the crimes of rape in the first degree and kidnapping in the second degree arising out of the incident on October 17, 1971. In that case, the jury could reasonably have found the following facts. The victim drove her car to a convenience store at 9:45 p.m. After returning to her car with her purchase, she was accosted by the defendant who displayed a gun. He forced the victim into the car and directed her to drive up a dirt road to a secluded area. There the defendant ordered her from the car, took off her clothes and forced her to have sexual intercourse. She was then ordered back into the car. The victim and the defendant drove on various streets and made numerous stops in the Norwich area according to the defendant's directions. Eventually the defendant ordered her to return to the place where the attack had occurred. While the car was stopped, another car, later discovered to be a police car, approached and the defendant fled. After the victim identified the defendant through photographs, he was arrested. The defendant raises four claims of error arising from his conviction in this incident, including three that are identical to issues previously raised in his rape conviction discussed above.

## A

The defendant asserts that the trial court's charge to the jury regarding the elements of the rape and kidnapping charges was "confusing" and that "[i]t is error to fail to explain certain key words in a charge when a more detailed elaboration of their meanings should

have been given." His brief does not, however, point out what "key words" the trial court should have explained. The defendant also claims that since restraint of the person is involved in both rape in the first degree and kidnapping in the second degree, the trial court should have instructed the jury to determine whether a detention or restraint was merely incidental to the rape.

Before we examine the defendant's claim of error, we note that the defendant made no requests to charge or took any exceptions to the jury charge. The defendant invokes the "plain error" doctrine, Practice Book § 4185,[9] and also belatedly claimed at oral argument that review should be extended under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). In the interest of justice, we will examine the court's charge, delivered over fifteen years ago, to the extent that any error implicates a fundamental constitutional right. "A trial court's failure to instruct on any of [the essential] elements warrants reversal regardless of whether the defendant objected at trial." *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985).

The only possible fundamental constitutional right that the defendant appears to be asserting is that the elements of rape and kidnapping were not properly explained to the jury, resulting in convictions that violate the dictates of *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), that every element of a crime must be proven beyond a reasonable doubt. See also *State* v. *Harman,* supra, 133–34. It is, of course, constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged.

[9] Practice Book § 4185 provides in part:"ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

" ' " 'If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime.' *United States* v. *Clark,* 475 F.2d 240, 248 (2d Cir. [1973])" . . . . ' *State* v. *Kurvin,* [186 Conn. 555, 561, 442 A.2d 1327 (1982)]." *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983); *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978). The trial court read General Statutes § 53a-72, rape in the first degree, to the jury, defined key terms such as "sexual intercourse" and "forcible compulsion," and instructed correctly on each essential element and later summarized each essential element. The trial court did the same for General Statutes § 53a-94, kidnapping in the second degree; it read the statute, defined key terms such as "abduct" and "restrain" and instructed correctly on each essential element of that crime and later summarized each essential element. Proper instructions were also given on consent and constancy of accusation. The trial court's charge to the jury satisfied any constitutional concerns as to whether the jury had been adequately instructed on each element of the crimes charged.

The defendant, while he argues otherwise, concedes in his brief that Connecticut law does not prohibit a conviction for both rape in the first degree and kidnapping in the second degree even when the kidnapping was incidental to the crime of rape. See *State* v. *Vass,* 191 Conn. 604, 614–15, 469 A.2d 767 (1983). There we said that "if the state proves all the elements of kidnapping, including the specific intent to restrain, beyond a reasonable doubt, the defendant may be convicted of kidnapping in addition to another felony, even though the two offenses arose out of the same conduct." Id. "[T]he question for the jury to decide is not whether the kidnapping was incidental to the rape but whether the evidence of intent to restrain is sufficient

to support convictions for the two distinct offenses arising out of a single act." *State* v. *Vass,* supra, 616 n.9. There was no error in the trial court's jury instructions as claimed.

### B

The defendant's next claim is that the trial court erred in imposing a sentence to run consecutively to that previously imposed by a court of another jurisdiction. We have answered the identical claim above in part I, C, and that analysis controls this issue. We also note that, in this case, the trial court actually sentenced the defendant to a sentence consecutive to his previous Connecticut sentence, which in turn, was to run consecutively to the West Virginia sentence. Therefore, the issue framed by the defendant is not properly before us in this case since this sentence will run consecutively to whatever sentence the defendant served for his conviction of rape without regard to the sentence from out of state. The defendant concedes that the sentencing court in this case has the authority to make his second Connecticut sentence consecutive to the earlier Connecticut sentence.

### C

The defendant's next claim is that the trial court erred in allowing the defendant to appear at his trial dressed in prison clothes. In this case, the defendant also raised no objection at trial. The defendant in this case was referred to as the man in "khaki" only once. In any event, this claim has the same problems as the claim he made concerning his conviction for the rape of June 21, 1971, including whether the defendant was, in fact, wearing prison clothes, whether he was compelled to do so and why the defendant's trial counsel never offered any objection. We follow our analysis of part I, D, and we are unable to afford the defendant any relief on this record.

## D

The defendant's final claim is that the defendant was denied effective assistance of counsel. As we decided in part I, E, of this opinion, this claim would be more properly addressed in a petition for habeas corpus. Accordingly, we decline to entertain it at this time.

We find no error in the conviction of rape arising out of the June 21, 1971 incident and the convictions of rape in the first degree and kidnapping in the second degree arising out of the incident on October 17, 1971.

In this opinion the other justices concurred.