STATE OF CONNECTICUT *v.* MILAIM IBRAIMOV

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued March 4—decision released June 15, 1982

*Murray J. Kessler,* special public defender, for the appellant (defendant).

*Douglas M. Karp,* special deputy state's attorney, with whom were *Carl Schuman,* assistant state's attorney, and, on the brief, *Walter D. Flanagan,* state's attorney, and *Richard Arconti,* assistant state's attorney, for the appellee (state).

SHEA, J. The jury returned a verdict of guilty on both counts of an information charging the defendant with sexual assault in the second degree in violation of General Statutes § 53a-71 and unlawful restraint in the first degree in violation of General Statutes § 53a-95. In his appeal from the judgment the defendant claims error (1) in the admission of evidence of other sexual misconduct on his part; (2) in the denial of his motion to suppress evi-

dence of an identification of him made by the victim from photographs; (3) in allowing the state to present additional testimony after it had rested and after final arguments had been completed; and (4) in refusing to allow the defendant to present further evidence after the jury had begun to deliberate but before they reached a verdict. We agree with the first claim of error and order a new trial. We disagree with the second claim. We shall not consider the third and fourth claims because the problems presented are unlikely to arise upon the retrial which is necessary.

The briefs indicate no substantial dispute over the facts which the jury might reasonably have found from the evidence. On March 1, 1979, at about 8 p.m. the victim of the crimes, a girl fourteen years of age, entered the automobile of a man she had never seen before in order to direct him to the Danbury fairgrounds. He had requested such directions when he stopped his car on Main Street in Danbury where she was walking to her home. After showing him the location she was driven to some remote area near Danbury where she was sexually assaulted by the driver, whom she later described to the police as a man of medium height and build with dark curly hair, brown eyes, a moustache, and a very light beard. Her assailant drove the victim back to Danbury, picking up a female hitchhiker enroute. The victim got out of the car in Danbury and later reported the incident to the police. The hitchhiker, who was a witness at the trial, testified that she was driven past her destination and that the operator of the car then offered her money to have sexual relations with him. After she refused he drove her back to the place she had requested.

# I

At trial the principal issue was the identity of the victim's assailant. In addition to the testimony of the victim and the hitchhiker, the state was permitted to present the testimony of a sixteen year old girl that on May 10, 1979, more than two months after the date of the crimes charged, she entered the car of the defendant on Main Street in Danbury when he offered her a ride. She had been sitting on a wall in front of the courthouse after leaving a party earlier that evening. She knew the defendant as a result of having met him previously through a friend, and she thought he recognized her. She asked to be driven to a point near her home, but the defendant took her to a remote area in New Milford where he made sexual advances which she resisted. He also offered her money, marijuana, and something to drink. Another car came along as they were parked and the girl pressed the horn of the defendant's vehicle. When the approaching car stopped she exited from the defendant's car. She told the people in the other car what was happening. The man driving that car emerged holding a gun which he pointed at the defendant who quickly drove away.

The trial court, after hearing the proffered testimony in the absence of the jury, concluded that any prejudicial effect was outweighed by its probative value on the issue of identification. The state claimed the evidence was admissible because it indicated that the defendant used a particular modus operandi in his attempt to have sexual relations with the sixteen year old girl which was also used in committing the offenses against this fourteen year old victim. The defendant objected

that the similarities between the two incidents were insufficient to make this evidence of any significant probative value on the identity issue and duly excepted to the court's ruling.

Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979). "That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material." *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756 (1974). Where such evidence is offered in proof of an issue in the case, and not merely to show an evil disposition on the part of the accused, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970). In this case the trial court performed this balancing test and decided to admit the evidence. Our review is limited to whether this ruling exceeded the latitude accorded to the exercise of judicial discretion. *State* v. *Falby,* supra; *State* v. *Barlow,* supra, 394; *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975).

The significance of the second incident in establishing the identity of the man who attacked the victim of the crimes charged two months earlier depends upon the extent of the similarity between the two occurrences. Both of the girls were young, the victim being fourteen and the second girl six-

teen; both were on Main Street in Danbury when they encountered the defendant; both said the defendant thrust some money at them in the course of seeking sexual relations, that he expressly or impliedly offered them marijuana and some alcoholic beverages, and that he took them to remote areas where he became physically aggressive. Beyond these comparisons the resemblances cease. The victim had no previous acquaintance with the defendant and was induced to enter the car upon the pretext that the driver was unable to find a particular location. The second girl was previously acquainted with the defendant and entered his car upon the offer of a ride to a place near her home. There is no evidence that the locus of the second incident was anywhere near the place where the victim testified she was assaulted. The victim's assailant grabbed her by the hair, held a knife to her throat, and said he would kill her if she did not submit. The second girl did not indicate that any weapon was used or that any threat was made by the defendant. Although each girl described the car in which she was driven as a large grey two-door automobile with a maroon interior, testified that the driver spoke with a foreign accent, and described him similarly, the admissibility of such evidence as relevant to identity would not justify the admission of testimony concerning the attempted sexual misconduct with the second girl. This innocuous evidence of the defendant's characteristics and his vehicle at the time of the occurrence was not so intertwined with the evidence of his misconduct that no separation was possible and the testimony of the second girl could have been so limited. To qualify for admission the act of prior misconduct itself must have special significance upon the issue of identity. The policy against such evidence cannot

be overcome by the fact that the witness who can testify to the misconduct may also be able to provide other relevant evidence in the case.

Evidence of other crimes or misconduct of an accused is admissible on the issue of identity where the methods used are sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other. Much more is required than the fact that the offenses fall into the same class. "The device used must be so unusual and distinctive as to be like a signature." McCormick, Evidence § 157. Although the state claims that such evidence has commonly been admitted in sexual offense cases, in most of the cases relied upon there has been a rather unusual pattern of behavior exhibited in each incident which might be regarded as distinctive. See *State* v. *Hauck,* 172 Conn. 140, 146–47, 374 A.2d 150 (1976); annot., 2 A.L.R.4th 395, § 11. Because of its prejudicial character, we have been reluctant to allow evidence of other crimes of the same class as the offense charged even within such a relatively narrow category as murder by poisoning. *State* v. *Gilligan,* 92 Conn. 526, 536, 103 A. 649 (1918). In the case before us none of the common features of the two sexual assaults can fairly be characterized as sufficiently distinctive to support a reasonable belief that the same person committed both. The number of times that young girls have been induced to enter automobiles upon similar pretexts and with similar consequences is just too great according to general experience to narrow the circle of possible suspects significantly. Offers of money, liquor and, in this day and age, marijuana as enticements are only slightly more unique than the use of a gun as a tool of the trade by a robber. We conclude that

the trial court erred in admitting the evidence of the defendant's sexual misconduct with the second girl.

## II

The claim of the defendant that evidence of the victim's identification of him from an array of photographs presented to her out of court should have been suppressed is likely to be repeated at a retrial of the case and, therefore, we shall consider it. The circumstances which the defendant relies upon in maintaining that the procedure used by the police was unduly suggestive are that the photographs from which the selection was made were shown to the youthful victim at her home in the absence of her parents by a single police officer without affording counsel for the defendant any opportunity to observe or participate. The police officer who conducted this identification procedure was aware that the defendant was represented by counsel in connection with the investigation by the New Milford police of another sexual assault complaint. The defendant claims that the procedure followed was, under all the circumstances, "unnecessarily suggestive and conducive to irreparable mistaken identification" in violation of his constitutional right to due process of law. See *Stovall* v. *Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967).

"In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the iden-

tification was nevertheless reliable based on examination of the 'totality of the circumstances.'" *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). From our review of the testimony at the hearing on the motion to suppress, we have concluded that the out-of-court identification procedure followed in this case was not unduly suggestive. Five days after the crime, which occurred on March 1, 1979, the victim reviewed more than 500 "mug shots" contained in the files of the Brookfield police department but identified none of the persons shown as her assailant. No photographs of the defendant were included in this examination. On May 23, 1979, another group of six photographs, none of which had been previously seen by the victim, was presented to her at her home. She selected as depicting her assailant a picture of the defendant which had been obtained from the New Milford police. In choosing this photograph the victim remarked, "[t]hat's him, but (in the picture) he doesn't have a moustache." Her original description to the police indicated that her assailant wore a moustache. The defendant makes no criticism of the six photographs used on this occasion as unfair or suggestive in any manner. This photographic array was available at the trial and was made an exhibit. There is no evidence to support the defendant's speculation that the police officer, as the only adult present at the time, may have said or done something to influence the selection made by the victim. We also are not persuaded that the absence of the victim's parents increased significantly the probability of misidentification or suggestiveness.

With respect to the fact that it would have been possible for the police to have notified counsel for the defendant who already represented him in the

New Milford investigation so that he could observe the identification procedure, we observe first that the constitutional right to counsel under the sixth amendment does not attach until the prosecution has commenced. *Kirby* v. *Illinois,* 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). At the time of this identification the reason the police suspected that the defendant might have committed this crime was that he was the subject of an investigation of another sexual assault offense in a town nearby. The officer who obtained the defendant's photograph from the New Milford police had learned of that investigation and spoke to the attorney for the defendant concerning his suspicions before showing the six photographs to the victim. No notice was given, however, that any photographic identification by the victim was contemplated. The fact that the defendant was represented in another case by an attorney who could easily have been afforded an opportunity to observe the photographic display to the victim, however, did not advance the date of the institution of this criminal proceeding or convert that procedure into a "critical stage" of the prosecution for which representation by counsel is essential. *Boyd* v. *Henderson,* 555 F.2d 56, 61 (2d Cir.), cert. denied, 434 U.S. 927, 98 S. Ct. 410, 54 L. Ed. 2d 286 (1977); *State* v. *Ledbetter,* 185 Conn. 607, 609–10, 441 A.2d 595 (1981).

Even where the showing of photographs to witnesses takes place after the prosecution has begun, it is held that the sixth amendment does not grant the right to counsel at such a proceeding. *United States* v. *Ash,* 413 U.S. 300, 321, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973). Such a photographic display has been distinguished from a lineup after the pros-

ecution is under way, which is deemed to be a "critical stage" of the proceeding requiring legal representation of the defendant. Id., pp. 321–22 (Stewart, J., concurring); cf. *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The basis for the distinction appears to be the greater degree of assistance which a lawyer might render where his client confronts witnesses in the flesh and may be required to speak or perform certain actions with increased opportunities for suggestiveness. *United States* v. *Ash,* supra, 314.

Apparently in recognition of these principles, the defendant contends not that his right to counsel was infringed but that the failure to allow his counsel to be present when his photograph was included in the group shown to the victim casts such doubt upon the reliability of the resulting identification that it should be excluded. Although participation of counsel would go far to refute any assertion that an identification was tainted, we are not inclined to make it a prerequisite to the admissibility of evidence obtained by a procedure which otherwise appears to have been fairly conducted. We are not aware of any authority which has adopted such a per se rule. Our conclusion is that the procedure used by the police was not unduly suggestive and that the trial court was justified in finding that the identification made by the victim was reliable under all the circumstances.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion SPEZIALE, C. J., PETERS and PARSKEY, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). I do not agree with that portion of the majority opinion which concludes that the trial court erred in admitting the evidence of the defendant's sexual misconduct with the second girl (the sixteen year old girl). I feel that this evidence was admissible to show a "system of criminal activity" or modus operandi by the defendant. See *State* v. *Hauck,* 172 Conn. 140, 374 A.2d 150 (1976). Pointing out that the principal issue at trial was the identity of the victim's assailant, the majority finds error in the trial court's conclusion that any prejudicial effect was outweighed by its probative value on the issue of identification. It sets out that the state claimed such evidence was admissible "because it indicated that the defendant used a particular modus operandi in his attempt to have sexual relations with the sixteen year old girl which was also used in committing the offenses against this fourteen year old victim." The majority then states that "the defendant objected that the similarities between the two incidents were insufficient to make this evidence of any significant probative value on the identity issue . . . ."

I have no quarrel with the majority's general statement that "[t]he significance of the second incident in establishing the identity of the man who attacked the victim of the crimes charged two months earlier depends upon the extent of the similarity between the two occurrences." After noting certain comparisons showing similarity between the two occurrences,[1] the majority then states

---

[1] These similarities include proximity in time of the two assaults, young age of the victims, location of the victim's initial encounter with the defendant, the defendant's offer of money and alcohol or drugs to the victims and the defendant's ultimate physical aggression while the victims were in a remote area.

"[b]eyond these comparisons the resemblances cease" and it proceeds to set out a few dissimilarities. Immediately thereafter, however, the majority, while saying that each girl "described" the car in which she was driven as a large grey two-door automobile with a maroon interior, that each girl "testified" that the driver spoke with a foreign accent, and that each girl "described him similarly," then goes on to say that "the admissibility of such evidence as relevant to identity would not justify the admission of testimony concerning the attempted sexual misconduct with the second girl." The majority opines that "[t]his innocuous evidence of the defendant's characteristics and his vehicle at the time of the occurrence was not so intertwined with the evidence of his misconduct that no separation was possible . . . ." I believe, however, that these last three patent similarities certainly render the proffered evidence relevant to the issue framed by the parties.

The general principle applicable here is that evidence is relevant if it has a tendency to establish the existence of a material fact. *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978); *State* v. *Villafane,* 171 Conn. 644, 675, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). " 'One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.' " *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36 (1972). I cannot, therefore, accept the "so intertwined" theorem of the majority in this con-

text; certainly the trial court could consider these last three admitted similarities of this evidence in the light of the claims before it.

In my view the majority fails to apply properly the test which we are required to apply to the contested ruling that requires reversal "only where an abuse of discretion is manifest or where injustice appears to have been done." *State* v. *Barlow,* 177 Conn. 391, 394, 418 A.2d 46 (1979); *State* v. *Hauck,* supra, 144; *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975). It matters not that we might have decided the question differently. In deciding whether there has been such an abuse or injustice in the trial court's resolution of this balancing test between the probative value and the prejudicial tendency of this evidence, every reasonable presumption should be given in favor of the correctness of the court's ruling. *State* v. *Barlow,* supra; *State* v. *Hauck,* supra; *State* v. *Brown,* supra. I submit that we have clearly indicated that we must affirm such a ruling unless we can say it was erroneous as a matter of law. *State* v. *Hauck,* supra, 144; *State* v. *Brown,* supra, 700–702.

Significantly, concerning the admission of evidence such as we have here this court has recently said: "An examination of recent decisions in other jurisdictions indicates a greater liberality in admitting evidence of other criminal acts to show a common scheme, pattern or design in sex related crimes." *State* v. *Hauck,* supra, 145. " 'Such evidence is admissible for a variety of other purposes, however, such as "when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive, *a system of criminal activity.* . . ." [Citations omitted.] "That

evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material; *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756 [1974]; *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 [1970]; see *State* v. *Jenkins,* 158 Conn. 149, 152–53, 157, 256 A.2d 223 [1969]; and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 [cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]; *State* v. *Holliday,* supra, 173." *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147 [1974] . . . . 'Evidence of another sex offense is admissible to show a common scheme or plan if the offense is proximate in time, similar to the offense charged, and committed with persons similar to the prosecuting witness. . . . Admissibility lies within the sound discretion of the trial court . . . and we see no abuse of discretion here.'" (Emphasis added.) *State* v. *Hauck,* supra, 144–45.

I believe that the proffered evidence of the subsequent sexual assault by the defendant clearly demonstrated "a system of criminal activity." The similarities between the two assaults outlined above and in the footnote far outweigh any dissimilarities. The issue, in my opinion, is actually one of prejudice versus probative value and on this point I see no reason to disagree with the trial court's conclusion. In fact, if the proffered evidence in this case were not admissible under this theory, it would be difficult to imagine exactly how similar an incident would have to be in order to be allowed into evidence.

Therefore, I dissent.