## STATE OF CONNECTICUT *v.* FRED LEE CROSBY (11706)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued March 7—decision released May 7, 1985

*Daniel F. Egan,* for the appellant (defendant).

*Susan C. Marks,* special assistant state's attorney, with whom, on the brief, were *John J. Kelly,* state's attorney, and *John M. Massameno,* assistant state's attorney, for the appellee (state).

SHEA, J. After a jury trial the defendant was convicted of burglary in the third degree in violation of General Statutes § 53a-103 and also of larceny in the first degree in violation of General Statutes § 53a-122. On appeal he claims error (1) in the failure of the court to render a judgment of acquittal for insufficient evidence and (2) in the admission of evidence of his par-

ticipation in similar offenses occurring about three weeks after the crimes presently before us. We find no error.

I

With respect to the claim of insufficient evidence, it is clear that the jury could reasonably have found the following facts from the testimony presented at the trial:

On June 1, 1981, at about 3 a.m., a burglar alarm at Shaw's jewelry store, located in a shopping center in Milford, was activated, and some Milford police officers responded. Upon arriving at the store they discovered that one of the glass panes in the front door had been broken inward, allowing entry. Four glass display counters located near the front of the store had been smashed, and items had been removed therefrom. A pane of glass in one door of a wall unit display case behind the counters had also been smashed. The pane of glass in the other door of the cabinet was intact, however, and a set of fingerprints was observed on the outside surface of the glass at the edge of this door. Some additional prints were discovered on a circular display case.

A piece of lumber, three to four feet in length, was found on the floor in front of the display counters. A cinderblock, which had apparently been used to break the glass in the door, was also found. Empty watch boxes were scattered on top of the display counters. Several watches and holders designed to exhibit watches in a display case were found by the police near a path leading from the rear of the shopping center to the parking lot of a church.

Ninety-one watches costing the jewelry store approximately $6000 were found to have been taken in the theft. The store had last been open on May 30, a Satur-

day, the break-in having occurred in the early morning hours of June 1, a Monday. The store owner testified that the glass display cases had been cleaned after 3:30 p.m. on Saturday, May 30, by store employees.

The Milford police were able to lift four fingerprints from the unbroken pane of glass in the door of the wall display cabinet. Only the prints of the right little finger and ring finger were sufficiently clear, however, to be used for identification purposes. These prints were subsequently found to match some known fingerprints of the defendant. Some other prints found at the scene proved not to be those of the defendant.

In his argument that the evidence of his guilt was insufficient, the defendant's principal contention is that the testimony of Sergeant Stephen Ambrisco, upon whom the state relied as an expert witness on the subject of fingerprint identification, was inadequate to support a reasonable inference that the fingerprints found on the glass of the wall display cabinet door were those of the defendant. He does not contend that, if the prints were his, they were found under such circumstances that they may have been impressed at some time other than when the crimes were committed. See *State* v. *Payne,* 186 Conn. 179, 182, 440 A.2d 280 (1982); *State* v. *Mayell,* 163 Conn. 419, 426, 311 A.2d 60 (1972). The testimony that shortly before the store closed the display cabinets were cleaned with a solution that would remove fingerprints and that the store was inaccessible from that time until the occurrence of the crimes was sufficient to establish the defendant's participation in the crimes, if his were the prints identified.

After describing the procedures used in obtaining and analyzing the prints found on the wall display cabinet door, Ambrisco, using photographic enlargements of these prints and some known prints of the corresponding fingers of the defendant, testified that he found

he found twelve "points of comparison" in respect to the right little finger and nineteen in respect to the right ring finger. He explained that a "point of comparison" was a similarity between the two prints. These similarities were illustrated by red lines and numbers drawn on the photographic enlargements, which were exhibits in evidence. He also testified that in fingerprint analysis twelve such points of comparison are normally the standard minimum for reaching a conclusion as to whether fingerprints can be identified as coming from a particular person.

On the day after the completion of his testimony, Ambrisco was recalled to the witness stand by the state over the objection of the defendant. The transcript of this testimony is as follows:

"Q. Sergeant, I omitted to ask you a question yesterday, which I'm going to ask you at this point. Namely, as a result of the comparisons and analysis you've made, as to the known fingerprints of Fred Crosby versus the latent fingerprints you found on the sliding glass wall display at the Shaw's Jewelers.

"Did you reach a conclusion as to whether or not the prints that you found that you identified them as the right little finger and right ring finger of the latent prints on the glass display case were in fact those of Fred Crosby?

"A. Yes, sir."

On this occasion the witness also testified that some palm prints found on other display cases did not match those of the defendant.

We agree with the defendant that the testimony given by Ambrisco upon his recall to the stand added nothing to the strength of the state's case, since the opinion which the officer said he had reached was never expressed. We disagree, however, with the claim that

the preceding fingerprint identification testimony was insufficient to support a reasonable inference that the fingerprints found at the scene were those of the defendant. According to that testimony, twelve "points of comparison" or similarities, as graphically illustrated upon the exhibits, were sufficient under the prevailing standard to support a conclusion that a fingerprint came from a particular person. There was evidence that this standard was met with respect to the right little finger of the defendant and exceeded with respect to his right ring finger. The jury could thus have reasonably concluded that the prints left on the wall display case door were those of the defendant. We therefore reject his claim of insufficient evidence.

## II

The remaining claim of error is the admission of evidence that the defendant, three weeks after the burglary of Shaw's jewelry store in Milford, committed a similar crime at a jewelry store in Norwalk, approximately twenty-five miles distant. On June 21, 1981, a Monday, at about 2 a.m., a burglar alarm at Sheaff's jewelers in Norwalk was activated. When the police arrived they discovered one pane of glass in the front door broken and a rock lying inside on the floor of the store. Glass display cases inside the store were broken, and items were missing from them. Watches were found on the floor, and a watch case was found on the sidewalk outside the store. The only items removed from the store were watches.

One of the officers who responded to the burglar alarm, as he was driving to the jewelry store, observed a vehicle traveling on the road about one-quarter mile from the store and radioed this information to police headquarters. Another officer stopped this vehicle about three-fourths of a mile from the store and spoke with the driver. During this conversation the officer

observed approximately eight watch boxes on the rear floor of the vehicle. The defendant was a passenger in the vehicle, and he and his two companions, Otis Carr and Charles Johnson, were subsequently arrested. The car was taken into custody by the police, and an inventory search led to the discovery of fifty-six watches, all but one bearing a price tag, on the floor of the vehicle. At the time of trial in this case the charges against the defendant and his companions arising out of the Norwalk burglary were still pending. In support of his alibi defense in this case the defendant offered the testimony of a woman with whom he had been living. In the course of her testimony she stated that on Sunday afternoon, May 31, the day before the Milford burglary, the defendant had been in the company of Otis Carr, one of his two companions at the time of the Norwalk arrest.

"Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). The principal issue at the trial of this case was the identity of the person or persons who broke into the jewelry store. The first threshold for the use of evidence of other crimes or misconduct on the issue of identity is that the methods used be "sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other." Id., 354. If this initial criterion is satisfied, the trial court must then balance the probative value of the evidence against its prejudicial effect and, before admitting it, must find that the former outweighs the latter. *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983).

After hearing the proffered testimony in the absence of the jury, the trial court concluded that the features common to the two burglaries were sufficiently unique to have substantial probative value upon the identity of the defendant as a participant in both crimes. We find no abuse of discretion in this determination. The similarities in the unsophisticated methods used to enter the stores; in the timing of the breaks at almost the same hour on Monday mornings three weeks apart; in the businesses conducted by the victims and the loot carried off, consisting exclusively of watches; and in the defendant's association with Otis Carr several hours before the Milford burglary and several minutes after the Norwalk burglary do increase, in some significant degree, the likelihood that the defendant participated in both crimes.

The second part of the inquiry, whether the probative value of the other crimes evidence is so great as to outweigh its unquestionably prejudicial effect, presents a closer question. On this occasion we are persuaded to accord our customary deference to trial court discretion. *State* v. *Braman,* supra, 676–77. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Howard,* 187 Conn. 681, 685, 447 A.2d 1167 (1982). The similarities between the two crimes, not just in their general nature but in the distinctive manner in which they were carried out, could reasonably be viewed as highly significant upon the principal issue of the identity of the Milford burglars. We find no abuse of discretion in the trial court's conclusion that the probative value of the evidence of the Norwalk crime outweighed its prejudicial effect. We are convinced also that no injustice was done, especially in view of the strong support for the defendant's conviction provided by the fingerprint

evidence. *Piquett* v. *United States,* 81 F.2d 75, 81 (7th Cir. 1936); 1 Wharton, Criminal Evidence (13th Ed. Torcia) § 83, p. 134; see *Duncan* v. *Stynchcombe,* 704 F.2d 1213, 1215 (11th Cir. 1983).

There is no error.

In this opinion the other judges concurred.