STATE OF CONNECTICUT *v.* EDWIN SIERRA
(13413)
STATE OF CONNECTICUT *v.* DAVID COLLIC
(13414)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

---

Argued October 12, 1989—decision released January 9, 1990

*William M. Bloss,* special public defender, for the appellant in the first case (defendant Edwin Sierra).

*Paul F. Thomas,* for the appellant in the second case (defendant David Collic).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard F. Jacobson* and *Jonathan C. Benedict,* assistant state's attorneys, for the appellee (state).

HULL, J. These appeals raise two principal issues: (1) the admissibility at trial of evidence concerning a prior robbery allegedly committed by the defendants; and (2) the constitutionality of allowing, in a joint trial, one defendant to call a codefendant as a witness. After a joint jury trial, the defendants, David Collic and Edwin

Sierra, were found guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[1] larceny in the second degree in violation of General Statutes §§ 53a-119 and 53a-123 (a) (1),[2] kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B),[3] and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48[4] and 53a-134 (a) (3). The trial court thereupon sentenced the defendants Collic and Sierra to total effective sentences of twenty years incarceration and twelve years incarceration, respectively. From these judgments the defendants appeal. We find error and remand each case for a new trial on all counts.

From the conflicting evidence presented at trial, the jury could reasonably have found the following. At approximately 9:15 p.m., on February 2, 1987, Fairfield police officers responded to a call for assistance at the Pequot Motor Inn in Fairfield where they dis-

[1] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument."

[2] "[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

"[General Statutes] Sec. 53a-123. LARCENY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars . . . ."

[3] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ."

[4] General Statutes § 53a-48 provides in relevant part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

covered a naked woman handcuffed to the pipes of a bathroom sink. The woman, G, was employed by Andre's Massage Service as a professional masseuse. She had gone to room 28 at the Pequot Motor Inn to give a massage to a man registered under the name of Milton Ramboe, who had called her employer to arrange the appointment.

G had arrived at the motor inn at 7:58 p.m., had knocked on the door of room 28, but then had attempted to leave when "Ramboe" failed to produce a Connecticut driver's license or to allow G to view his face prior to her entering the room. As she had turned to leave, however, she was grabbed by the hood of her coat and was pulled into the room by "Ramboe," whom she later identified as the defendant Collic. After she was dragged into the room and thrown onto the bed, a second person, whom she later identified as the defendant Sierra, emerged from the bathroom, displayed a knife and threatened to cut her throat if she screamed. Sierra was wearing a belt with two sheaths, one empty and one containing a knife. Also on the belt were two sets of handcuffs. While a knife was held to her, G was blindfolded, gagged, undressed, punched in the stomach, and handcuffed to the bathroom sink. The defendants then left the room, taking with them her wallet, clothes and jewelry. After the police arrived in response to reports of G's screams for help, G discovered that her automobile was also missing. It was later recovered in the Bronx, New York.

On February 4, 1987, Darien police arrested the defendants on burglary charges unrelated to the Pequot Motor Inn incident. The defendants were searched and the officers seized two large knives, G's driver's license and a Milton Ramboe identification card from Collic, and handcuff keys from Sierra. The defendants were thereafter charged in connection with the Pequot Motor Inn incident.

On appeal, the defendants claim that the trial court erred in admitting into evidence testimony concerning a robbery allegedly committed by them two days prior to the incident for which they were on trial. Sierra further claims that the trial court erred in allowing Collic to call him as a witness in violation of his fifth amendment right not to testify at his own trial. Collic makes the additional claims that the trial court erred: (1) in admitting evidence of his flight when he was apprehended in an investigation concerning a Darien burglary, a crime unrelated to that for which he was being tried; and (2) in overruling objections to the state's closing argument. We find error in the trial court's admission of the prior crime evidence and in Sierra's having been compelled to testify at his own trial. We shall not consider the additional claims raised by Collic because the problems presented are unlikely to arise upon the retrial that we order.

I

During the trial, over defense objections, the state presented evidence that the defendants had committed an armed robbery of a Greenwich taxi driver two days prior to the incident for which they were being tried.[5] On appeal, the defendants claim that the trial court erred in admitting the evidence of this alleged prior crime. We agree.

For the purpose of discussing this issue, we must first explain the context in which it arose. The state presented no evidence of the Greenwich robbery in its case-in-chief. Rather, the prior crime evidence was introduced during cross-examination of Collic and during the state's rebuttal case. The evidence was presented in response to the testimony of Collic, who took the witness stand in his own defense. Collic admitted that on

---

[5] At the time of this trial, Collic had been charged with and Sierra had pled guilty to the Greenwich robbery.

February 2, 1987, he had registered at the Pequot Motor Inn under the name of Milton Ramboe. He also admitted that he had taken G's clothes and purse. Collic denied, however, that he had committed any other criminal acts that night, and also denied that Sierra had been present in room 28 of the Pequot Motor Inn on February 2, 1987.

In contrast to G's version, Collic testified that February 2 was his birthday and that he had consequently called Andre's Massage Service to arrange for sexual services. According to Collic, when G arrived for the scheduled appointment, she voluntarily entered the motel room and discussed prices for various sexual activities. Upon their reaching an agreement, G undressed herself and placed, on one hand, handcuffs that she had brought with her. She then allowed Collic to handcuff her to the bathroom sink as a prelude to anticipated sexual activity. Collic testified that after he handcuffed her to the sink, he decided not to complete the transaction and left, taking with him G's clothes and purse.

On direct examination, Collic admitted that he and Sierra were arrested in Darien on February 4, 1987, on other charges, and further testified that he and Sierra were together in New York City on February 3, 1987, at which time Sierra had taken from him the handcuff keys that were seized from Sierra during his arrest in Darien. On cross-examination, Collic reiterated that Sierra had not been with him at the Pequot Motor Inn. Over objection, the state was then allowed to ask whether the defendants had taken a taxi ride together on January 31, 1987. Collic responded in the negative, but admitted that he had known Sierra on January 31, 1987. Also over objection, the state was allowed to ask Collic whether he and Sierra had taken the taxi at knife point and had then driven the taxi into the Bronx. The trial court admitted these questions as

probative of the identity of the persons, specifically Sierra, who allegedly had been present at the Pequot Motor Inn on February 2, 1987.

On the next trial day, Collic filed, and Sierra joined, a written motion to preclude the state from introducing in its rebuttal case evidence regarding the alleged January 31 robbery in Greenwich. The trial court explained that Collic's denial of Sierra's presence at the motor inn on the night of the crimes involving G "projected this entire issue," and that the state had a "right to produce evidence to show that the converse [of Collic's testimony was] true." Thus, after the state had made an offer of proof as to the details of the Greenwich robbery, the court denied the defendants' motion and admitted detailed testimony about the Greenwich incident on the issues of Sierra's identity and Collic's credibility.

The rules governing the admissibility of evidence of a criminal defendant's prior misconduct are well established. " ' "As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399 [1960]." *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961); McCormick, Evidence (2d Ed. 1972) § 190; 1 Wharton, Criminal Evidence (13th Ed.) § 170. The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. See *State* v. *Williams,* 190 Conn. 104, 108, 459 A.2d 510 (1983); *State* v. *Howard,* 187 Conn. 681, 684, 447 A.2d 1167 (1982); *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979); 1 Wigmore, Evidence (3d Ed.) §§ 215–18. Evidence of other misconduct, however, "may be allowed for the purpose of proving many different things, such as intent, identity,

malice, motive or a system of criminal activity"; *State* v. *Ibraimov,* supra; or an element of the crime. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982).' *State* v. *Braman,* 191 Conn. 670, 675–76, 469 A.2d 760 (1983); *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980)." *State* v. *O'Neill,* 200 Conn. 268, 273, 511 A.2d 321 (1986). Such evidence may also be admissible when a defendant testifies and his credibility is in issue. *State* v. *Brown,* 169 Conn. 692, 701, 364 A.2d 186 (1975).

To be admitted under one of these exceptions, the evidence must satisfy a two-pronged test: " 'First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions.' *State* v. *Braman,* [supra, 676]. Second, the probative value of the evidence must outweigh its prejudicial effect. Id." *State* v. *Mandrell,* 199 Conn. 146, 151, 506 A.2d 100 (1986). With these general principles in mind, we turn to the specific grounds upon which the evidence of the defendants' alleged prior misconduct was admitted.[6]

## A

### IDENTITY

The trial court ruled that evidence concerning the Greenwich robbery and the details thereof was admissible in that it tended to establish the identity of the

[6] The trial court stated that the jury could consider the evidence that the defendants were together on January 31, 1987, as circumstantial evidence that they were together at the Pequot Motor Inn on February 2, 1987. The trial court, however, admitted not only testimony that the defendants were together on January 31, 1987, but also testimony that the defendants had committed an armed robbery on that evening. The court specifically stated several times that the jury could consider that evidence on the issues of identity and credibility, two recognized exceptions to the general rule prohibiting the admission of prior crime evidence, discussed supra. It is to these issues that the defendants limit their attack on appeal and that we likewise limit our discussion.

persons, specifically Sierra, who had allegedly been present in room 28 of the Pequot Motor Inn on February 2, 1987. An analysis of this ruling requires an inquiry into first, whether the evidence was in fact relevant to the issue of identity, and second, if so, whether its probative value outweighed its prejudicial tendency.

"The first threshold for the use of evidence of other crimes or misconduct on the issue of identity is that the methods used be 'sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other.' [*State* v. *Ibraimov*, supra, 354]." *State* v. *Crosby*, 196 Conn. 185, 190, 491 A.2d 1092 (1985). " 'Much more is required than the fact that the offenses fall into the same class. "The device used must be so unusual and distinctive as to be like a signature." ' *State* v. *Ibraimov*, supra, 354." *State* v. *Mandrell*, supra, 151–52. In order to determine if this threshold criterion for admissibility was met, we must examine the proffered evidence and compare it to the charged offenses.

Prior to both the cross-examination of Collic and the presentation of the state's rebuttal, the state made offers of proof with respect to the details it planned to introduce into evidence concerning the Greenwich robbery. The information related to the trial court was as follows.[7] On the evening of January 31, 1987, Fernando Arenes was operating a taxi in Greenwich. He picked up a single person, later identified as Sierra, near the train station in Greenwich. At Sierra's direction, he proceeded a short distance and then picked up another person, later identified as Collic. Sometime thereafter, Sierra, from the back seat, put something

---

[7] The offer of proof made prior to the introduction of the rebuttal case was more detailed than that made prior to the cross-examination of Collic. Our discussion is limited to the more detailed offer of proof, because we find even it to have been insufficient to establish the relevancy of the prior crime evidence on the issue of identity.

sharp or hard into Arenes' neck, and Collic, seated in the passenger seat, pulled out a knife and threatened Arenes. The defendants then forced Arenes to drive his taxi to the Merritt Parkway. Once on the parkway, the defendants, having taken from Arenes his money, watch, and boots, forced Arenes out of the car. Three days later the cab was found in the Bronx.[8]

The trial court indicated that both the Greenwich and the Fairfield incidents involved "an ingredient of robbery," but did not articulate further the similarities between the two incidents upon which it had relied in determining the admissibility of the evidence. The state argues that the similarities between the Greenwich and Fairfield incidents that were described during the state's offers of proof were sufficiently distinctive to warrant the inference that the individuals who committed the first offense also committed the second. We are not persuaded that the events and circumstances common to the two incidents were, as our law requires, " 'so unusual and distinctive as to be like a signature.' " *State* v. *Ibraimov,* supra, 354, quoting C. McCormick, Evidence § 157.

There is nothing distinctive about the use of a knife to commit an armed robbery, particularly where, as here, the knives used in the two incidents were admittedly not the same. Compare *State* v. *Braman,* supra, 679 (the use in two robberies of a "single-barrel pump-action shotgun unique for its cut-down configuration" found to be a particularly distinctive feature). There is also nothing particularly distinctive about the use of threats during the commission of an armed robbery. The definition of robbery in the first degree contemplates that the use of threats is common to the crime: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of imme-

---

[8] The testimony of Fernando Arenes mirrored this offer of proof.

diate flight therefrom, he or another participant in the crime . . . uses *or threatens the use of a dangerous instrument."* (Emphasis added.) General Statutes § 53a-134 (a) (3). Nor is there any marked significance in the items taken from the two victims: money, jewelry, clothing, and automobiles. In both instances, the perpetrators of the crimes were less than selective in the items they stole; to the contrary, they took almost every item possessed by the victims. Compare *State* v. *Crosby,* supra, 191 (the fact that exclusively watches were taken from a jewelry store robbery and jewelry store burglary found to be a unique similarity). Although there might have been some distinctiveness in the fact that both automobiles used to flee the crime scenes were found in the Bronx *if* the cars had been found in close proximity to one another, the record does not indicate that this was the case.

Finally, even if the similar features of the two incidents are considered in combination with one another, the pattern that emerges does not rise to the level of uniqueness or distinctiveness required by law.[9] The number of times two men take items of value from individuals, using a knife and threats to accomplish their task, flee in a car so taken, and then abandon the car in a city near the scene of the crime "is just too great according to general experience to narrow the circle of possible suspects significantly." *State* v. *Ibraimov,* supra, 354 (although two teenage sexual assault victims had been induced to enter vehicles of the same description by promises of money, liquor, or marihuana before the assaults, these common features could not fairly be categorized as sufficiently distinctive to support a reasonable belief that the same person committed both). These facts and circumstances do not meet the threshold criterion for admissibility; there-

---

[9] We do not deny that each of the incidents involved distinctive features; however, those features were not common to both robberies.

fore, the admission of the prior crime evidence on the issue of Sierra's identity was error.

## B

### CREDIBILITY

We next consider whether the trial court properly admitted the prior crime evidence on the issue of Collic's credibility. At trial, the state argued that it had a right to impeach Collic's credibility by showing that he had not been truthful when asked whether he and Sierra had been together in a taxi cab in Greenwich two days prior to the Pequot Motor Inn incident. The state contended that it had "a right to show that [the defendants] were together almost constantly . . . two days before." The defendants do not argue on appeal that the state was prohibited from asking Collic whether he had been in a taxi with Sierra on January 31, 1987, nor do they argue that the state was prohibited from presenting a limited rebuttal to support that contention. Rather, the defendants contend that the trial court erred in allowing evidence of the Greenwich robbery and the details thereof on the issue of Collic's credibility. We agree.[10]

As stated earlier, evidence of prior misconduct may be admissible " 'when the defendant has testified and

---

[10] Fernando Arenes' identification of the defendants as the men who had been in his taxi on January 31, 1987, is not encompassed by our references to "prior crime evidence." Two weeks after the Greenwich incident, Arenes was arrested for driving while intoxicated and was consequently placed in the Stamford lockup. He noticed that in the next cell was a man, later identified as Sierra, wearing the boots that had been taken from him during the Greenwich robbery. He then recognized Sierra and another man in the lockup, later identified as Collic, as the men who had robbed him at knife point on January 31, 1987. He later identified the defendants from two photographic arrays. Arenes' identification of the defendants as the men who had been in his taxi on January 31, 1987, absent the details concerning Arenes' boots and absent any other details concerning the robbery, is not included in our use of the phrase "prior crime evidence."

the State seeks to impeach his credibility.' " *State* v. *Brown,* supra, 701, quoting *Spencer* v. *Texas,* 385 U.S. 554, 560, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967). During Collic's testimony, he denied that Sierra was present at the Pequot Motor Inn on February 2, 1987, and also denied the version of events testified to by G. " 'When a witness voluntarily testifies, as did [Collic] here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word.' *State* v. *Staples,* 120 N.H. 278, 283, 415 A.2d 320 (1980), quoted in *State* v. *Glenn,* 194 Conn. 483, 498–99, 481 A.2d 741 (1984)." *State* v. *Williamson,* 206 Conn. 685, 699, 539 A.2d 561 (1988). The state argues that the identification of the defendants by the taxi driver, offered to prove that Collic had been untruthful about his association with Sierra on January 31, 1987, reflected on the credibility of Collic's testimony concerning his association with Sierra on February 2, 1987. "Any evidence materially bolstering his identification of the defendant would necessarily be of importance. *Robinson* v. *United States,* 459 F.2d 847, 857 (D.C. Cir. [1972]); see *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 [1967]." *State* v. *Brown,* supra, 701–702. Thus, the state argues that the taxi driver's testimony concerning the details of the robbery was material in showing the basis for his being able to recognize the defendants.

It does not follow, however, that if the acts inquired about are relevant, the court must permit the testimony. "Even though the evidence may be relevant and material to the issue of the defendant's credibility, the court is still required to conduct a balancing test to determine whether the probative value of the evidence outweighed its prejudicial tendency. *State* v. *Braman,* [supra, 681]. . . . 'Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is man-

ifest or where an injustice appears to have been done.'
*State* v. *Howard,* [supra, 685]; *State* v. *Braman,* supra,
676. Our review is limited to whether the trial court's
rulings exceeded the latitude accorded its discretion in
such matters. See *State* v. *Braman,* supra. Every rea-
sonable presumption should be given in favor of the trial
court's ruling. *State* v. *Howard,* supra." *State* v. *Wil-
liamson,* supra, 698–99.

This standard of review having been set forth, it is
important to note that the trial court's discretion in this
context is limited. The trial court's "discretion" to
admit other crimes evidence "imports something more
than leeway in decision-making. See *State* v. *Battle,* 170
Conn. 469, 365 A.2d 1100 [1976]; *State* v. *Gilligan,* 92
Conn. 526, 103 A. 649 [1918]; McCormick, Evidence
(2d Ed.) § 190. ' "Discretion means 'a legal discretion,
to be exercised in conformity with the spirit of the law
and in a manner to subserve and not to impede or
defeat the ends of substantial justice. . . . ' " ' *State*
v. *Battle,* supra, 476; see *Hammerberg* v. *Leinert,* 132
Conn. 596, 604–605, 46 A.2d 420 [1946]. When assess-
ing the admissibility of 'other crimes' evidence, the
application of a mechanical test determining that the
proffered evidence fits within some class of exception
to the rule of nonadmissibility, may obscure sight of
the underlying policy of protecting the accused against
unfair prejudice. That policy ought not to evaporate
through the interstices of the classification. The prob-
lem is thus one of balancing the actual relevancy of the
'other crimes' evidence in light of the issues and the
other evidence available to the prosecution against the
degree to which the jury will probably be roused by the
evidence. *State* v. *Holliday,* [159 Conn. 169, 173, 268
A.2d 368 (1970)]; 6 Wigmore, Evidence (3d Ed.)
§ 1904." *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d
560 (1979).

It is apparent from a review of the transcript that the trial court abused its discretion by not performing the necessary balancing test. The record reveals that the court recognized that the evidence was prejudicial,[11] but made no effort to consider the nature of the prejudice or to weigh the prejudice against the probative value of the other crime evidence. The court ended its inquiry upon determining that the evidence was relevant to one of the exceptions to the general rule of nonadmissibility. As *Onofrio* makes clear, the balancing process is critical to the determination of whether other crime evidence is admissible. Therefore, notwithstanding our deferential standard of review, the failure of the trial court to balance the probative value of the proffered evidence against its prejudicial tendency constitutes an abuse of discretion. Accordingly, the admission of the prior misconduct evidence on the issue of Collic's credibility was error.

## C

### HARMLESS ERROR ANALYSIS

Although we find that the trial court erred in admitting the prior crime evidence on the issues of identity and credibility, the question remains whether the error was harmful. The error in this case does not involve, and the defendants do not claim, a constitutional violation. " 'When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain,* 171

---

[11] To one of Collic's many objections to the prior crime evidence, on the ground that it was prejudicial, the court responded: "Oh, that it is. Certainly." Without further comment by the court, the court overruled the objection.

Conn. 293, 300, 370 A.2d 928 (1976).' *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988)." *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988). We conclude that the defendants have met their burden.

With respect to Collic, there was no dispute over whether he was present in room 28 of the Pequot Motor Inn when G was handcuffed and her purse and clothes were taken. The dispute was whether those events arose from a kidnapping and robbery or whether they arose from an unconsummated but voluntary transaction. Also disputed was whether Collic had taken G's car. With respect to Sierra, there was a dispute as to whether he was even present at the Pequot Motor Inn on the night in question. Resolution of these issues should have turned largely on assessments of the credibility of G and Collic who presented conflicting versions of the events that transpired on February 2, 1987. The potential prejudicial effect of the evidence that Collic and Sierra earlier had robbed another individual at knife point and had taken his car is apparent. It is more probable than not that it influenced the jury to believe that the defendants were violent persons predisposed to commit, in conjunction with one another, the alleged offenses for which they were on trial. " ' "Any improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." ' " *State* v. *Onofrio,* supra, 32, quoting *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367 (1961). Each defendant is therefore entitled to a new trial.

Having found reversible error on the defendants' joint claim, and having ordered new trials, we need not look to other claims of error. It is possible, however, that in the event of a new trial, the trial court will be faced with an issue raised in Sierra's other claim on appeal, and we are unwilling to risk the recurrence of the error to which Sierra calls our attention.

## II

Sierra claims that the trial court erred in allowing Collic to call him as a witness, because a criminal defendant has an absolute constitutional and statutory right to refuse to take the stand at his own trial. We agree.

After the presentation of the state's rebuttal case in which the details of the Greenwich robbery were presented, Collic served Sierra with a subpoena ad testificandum. Collic explained that he wished to elicit from Sierra testimony that Collic had not been with Sierra in Greenwich on January 31, 1987. Sierra objected to the subpoena, claiming that it violated his fifth amendment right not to take the stand at his own trial. The trial court responded that Sierra had no fifth amendment right with respect to the Greenwich case, because Sierra had pled guilty and had already been sentenced on charges arising out of that case. Sierra then moved for a severance, which the court denied.

Sierra, after having been threatened with contempt if he refused to testify, took the witness stand and stated that Collic had not been with him in Greenwich on January 31, 1987. The state, on cross-examination of Sierra and over objection, impeached him with the conviction arising out of the Greenwich case, eliciting evidence that Sierra had pled guilty to a felony in the Stamford judicial district for which he had received a three year sentence.

The fifth amendment to the United States constitution provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." It is well established that through this language a criminal defendant is afforded "the right not only to avoid giving incriminating responses to inquiries put to him but also to be free from the inquiries

themselves. Thus the privilege of an accused allows him not only to refuse to respond to questions directed at his alleged participation in the offense but also entitles him not even to be called as a witness at his own trial." C. McCormick, Evidence (4th Ed. 1984) § 130. "For a codefendant in a criminal case, the privilege of course applies—i.e., one defendant cannot call a codefendant unless the latter waives his privilege." 8 J. Wigmore, Evidence (McNaughton Rev. 1961) § 2268, p.410; see *United States* v. *Barber,* 442 F.2d 517, 529 (3d Cir.), cert. denied, 404 U.S. 958, 92 S. Ct. 327, 30 L. Ed. 2d 275 (1971); *United States* v. *Echeles,* 352 F.2d 892 (7th Cir. 1965); *De Luna* v. *United States,* 308 F.2d 140, 149 n.25 (5th Cir. 1962); *United States* v. *Housing Foundation of America,* 176 F.2d 665, 666 (3d Cir. 1949).

In Connecticut this right has been statutorily protected by General Statutes § 54-84 (a) which provides in pertinent part: "Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial."

Sierra had an absolute constitutional and statutory right not to be called as a witness at his own trial. Collic thus could not call him as a witness absent a waiver by Sierra of his rights. There is nothing in the record to suggest that Sierra validly waived his constitutional right not to be called as a witness. A waiver of a constitutional right is an "intelligent relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); see *State* v. *Wilson,* 199 Conn. 417, 443, 513 A.2d 620 (1986). " '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . we 'do not presume acquiescence in the loss of fundamental rights.' " *Johnson* v. *Zerbst,* supra. Sierra twice informed the court of his refusal to testify. He ultimately took the stand only after the court erroneously stated that

Sierra had no legal right to refuse to testify and threatened Sierra with contempt if he did refuse. This hardly rises to an "intelligent relinquishment or abandonment of a known right or privilege." Id. Likewise, there is no support in the record for the proposition that Sierra voluntarily exercised his "option" to testify pursuant to General Statutes § 54-84 (a).

It is our view that compelling a criminal defendant to take the stand and to testify in a criminal prosecution against him is so fundamental an error that automatic reversal is required and may not be disregarded. While the United States Supreme Court has rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction; *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 82 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); it has also recognized that some constitutional errors "are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Although the *Van Arsdall* court did not include the violation of a defendant's absolute right not to testify at this own trial as an example of such a constitutional error,[12] we believe that it falls within this special category.

---

[12] The court cited specifically to footnote 8 in *Chapman* v. *California,* 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967), as exemplary of the constitutional errors that require automatic reversal. *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Footnote 8 of *Chapman* refers to the right to counsel, *Gideon* v. *Wainright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); coerced confessions, *Payne* v. *Arkansas,* 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 (1958); and the right to an impartial judge, *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).

We look as authority for our view on this issue to two decisions of the Second Circuit Court of Appeals. In *Johnstone* v. *Kelly,* 808 F.2d 214 (2d Cir. 1986), cert. denied, 482 U.S. 928, 107 S. Ct. 3212, 96 L. Ed. 2d 699 (1987), the court considered a sixth amendment violation in light of *Delaware* v. *Van Arsdall,* supra, and held harmless error analysis inappropriate, stating that "[h]armless error analysis has not been applied to rights that are essential to the fundamental fairness of a trial or that promote systematic integrity and individual dignity." *Johnstone* v. *Kelly,* supra, 218. Subsequently, in *Biller* v. *Lopes,* 834 F.2d 41, 46 (2d Cir. 1987), the court held that the use of compelled testimony for impeachment purposes in violation of the fifth amendment satisfies this test.[13] Likewise, we find that to compel a criminal defendant to testify at his own trial in violation of his fifth amendment right not to take the stand derogates from the integrity of the constitution and the judicial system and affects an individual's dignity in such a way that cannot be tolerated. Automatic reversal is required.

There is error, the judgments are set aside and each case is remanded for a new trial in accordance with this opinion.

In this opinion HEALEY, SHEA and GLASS, Js., concurred.

CALLAHAN, J., concurred in the result.

---

[13] "The right of a person not to be compelled in a criminal case to be a witness against himself is a fundamental right under the 5th Amendment, affecting 'the very essence of constitutional liberty and security.' " *United States* v. *Housing Foundation of America,* 176 F.2d 665, 666 n.1 (3d Cir. 1949), quoting *Boyd* v. *United States,* 116 U.S. 616, 630, 6 S. Ct. 524, 29 L. Ed. 746 (1886).